## Runians v. Keller & Brady Co., et al.

(Decided February 1, 1911.)

### Appeal from Kenton Circuit Court
(Crim. Com. L. & E. Div,).

Master and Servant—Dangerous Place to Work—Injury to Servant—Liability of Master—Question for Jury.—The general rule is that when a master directs an employe to enter a dangerous place to labor and the employe complies with the order and is injured he can recover from the master unless the danger was so obvious and imminent that an ordinarily prudent person would not have undertaken the work even though ordered by the master, to do so. This is a question for the jury to determine.

B. F. GRAZIANI and G. F. BOUGHNER for appellant.

MYERS & HOWARD, S. D. ROUSE, BENJAMIN D. WARFIELD and CHAS. H. MOORMAN for appellees.

OPINION OF THE COURT BY JUDGE NUNN.

This is an appeal from a judgment obtained by a peremptory instruction in favor of appellees. The action was brought by appellant for the recovery of damages for personal injuries received by him while at work widening a tunnel about two thousand feet long and situated about ten miles south of the city of Covington on the L. & N. R. R. Appellant alleged in his petition, in substance, that he was an employee of the Keller & Brady Company; that he, aided by four other men, had made a shot of dynamite in the tunnel and, while waiting for the smoke and dust to disappear, was gathering up the wires used to discharge the dynamite by connecting it with electric batteries; that while he was doing this, a Mr. Nease, the walking boss for Keller & Brady Company, appeared and said to him, in rough language, that he was about to "block" a train which was near the mouth of the tunnel, and for him to make a hand and help remove the debris which had been thrown upon the track by the explosion of the dynamite, so the train could pass. Appellant informed him that he had not scaled the roof where the shots were made. Nease then went with his gasoline light or flambeau to the place where the blasts were made, held it up, waived it around over the roof and said that it was all right and for him to go ahead, make a hand and remove the debris. Appellant, in obedience to these orders, was clearing away the debris when a stone fell from the roof upon his foot and so injured it that it became necessary to amputate it, and otherwise injured him.

Appellant alleged that Nease was the general walking boss; that it was his duty to obey his orders; that appellees knew, or by the exercise of ordinary care, could have known of the dangerous condition of the roof, and that he did not know of it. Appellees answered controverting the allegations of the petition and the L. & N. R. R. Co., pleaded that Keller & Brady Company were working as independent contractors; that it had nothing to do with the work and that appellant was not its employe. The evidence sustained the allegations of the petition. Appellant, the only person who testified as to the negligence of Keller & Brady Company, in addition to sustaining the allegations of his petition,

stated that he had been at work in this tunnel for several months; that up until July he worked as a carpenter making forms for the concrete work; that he was injured at that time and went home and staid until he became able to work again; that when he returned, not being able to assume the carpenter's work, appellees gave him lighter work; that he was made boss of a crew consisting of from four to seven men; that it was their duty to put the dynamite in the roof of the tunnel, discharge it, scale the roof, so that it would be reasonably safe, and to remove the debris; that on the morning of his injuries he and his men scaled the roof where a previous blast had been made, fired another blast and were waiting, as stated, for the smoke and dust to disappear from the tunnel so that they could enter it, scale the roof and remove the debris. He further testified, as before stated, that he was afraid to remove the debris without first scaling the roof, but said that he was not sure that the roof was dangerous and supposed that Nease was correct when he said that it was safe after making the examination; that under this assurance he went to work as directed; that he was told at the time he began this work to obey the orders of Nease who had control of the work in the tunnel. When appellant went to work, he was told to always scale the wall the first thing after a shot was fired, and he would have done so on this occasion but for the fact that he was ordered by Nease to remove the debris first, and was told that the roof was safe.

Appellee Keller & Brady Company insist that appellant knew as much about the roof as Nease and that he had no right to obey Nease's orders, and for that reason the peremptory instruction was right. They further contend that as he entered the tunnel knowing the roof to be dangerous, he is guilty of contributory negligence which prevents a recovery. They cite as sustaining these propositions, the following cases, Tanner's Admr v. Wickliffe Coal Co., 108 S. W., 351; Breckinridge & Pineville Syndicate v. Murphy, 18 Ky. Law Rep., 915; Ashland Coal & Iron Co. v. Wallace, 101 Ky., 626; Lindsay v. Hollenbach & May Contract Co., 29 Ky. Law Rep., 68, and Clifton v. C. & O. Ry. Co., 31 Ky. Law Rep., 431. These cases do sustain the last proposition. In other words, if appellant had been directed to always scale the roof after a blast before doing anything else, and knowing that they had not been scaled, went to work to remove the debris, he would be guilty of contrib-

utory negligence which would prohibit his recovery.
The authorities cited do not, however, sustain the first
proposition. This is a case in which the master and ser-
vant both knew that the roof had not been scaled, and
wherein the master, in the presence of the servant, ex-
amined the roof, assured the servant that it was safe
and directed him to remove the debris before scaling the
wall so that an approaching train might pass. The gen-
eral rule is that when a master directs an employe to
enter a dangerous place to labor and the employe com-
plies with that order and is injured, he can recover from
the master, unless the danger was so obvious and im-
minent that an ordinarily prudent person would not have
undertaken the work, even though ordered by his mas-
ter to do so. This is a question for the jury to deter-
mine. (I. C. R. R. Co. v. Edmonds, 33 Ky. Law Rep.,
933.) In the case of Pullman Co. v. Geller, 128 Ky., 72,
this court, in speaking of the rule that obtains when a
servant of his own volition enters a place to work
knowing the danger, said:

"This rule must, however, be applied with some
modification, if the work is done in an emergency and
by the direction of the master, or by his express com-
mand in the absence of an emergency, and the master
gives the servant to understand that he does not consider
the risk one which a prudent man would refuse to under-
take, in such event the servant, notwithstanding his
knowledge of the danger, has a right to rely on his mas-
ter's judgment, unless his own is so clearly opposed
thereto that, in fact, he does not rely upon the master's
opinion."

In the case of Ashland Coal & Iron Ry. Co. v. Wal-
lace, 101 Ky., 626, the court said:

"The servant has a right to presume, when directed
to work in a particular place, that the master has per-
formed his duty and to proceed with the work, relying
upon this presumption."

In the case of Burton's Admr v. Eddington-Griffiths
Const. Co., et al., 118 S. W., 1001, this court said:

"It was a question for the jury whether the master
had used ordinary care to furnish his servant a reason-
ably safe place to work; for if the rock of the roof of
the tunnel was bad, and had earth seams in it such as
they describe, it would be a question for the jury whether
a man of ordinary prudence should not have anticipated
that the rock was liable to fall. The rule is that, if there

is any evidence warranting a finding for the plaintiff, the question is for the jury.''

In the case of Stephens v. Hannibal & St. J. Ry. Co., 9 S. W., 591, the court said:

''So, too, where the danger is patent, and is known to the servant, the master may be liable for injuries resulting therefrom, as where he has lulled the servant into a sense of security by insisting there is no danger, or has promised to remove the defect. Wood on Master & Servant, section 352. And, more to the point in this case, a recent text book uses this language: 'If, therefore, the master orders the servant into a situation of danger, and he obeys, and is thereby injured, the law will not deny him a remedy against the master on the ground of contributory negligence, unless the danger was so glaring that no prudent man would have entered into it, even where, like the servant, he was not entirely free to choose.' ''

From these authorities, it is clear that the established rule is, that where a servant proceeds under the express orders of his superior in performing an act whereby he is exposed to unusual danger, and sustains an injury from it, the master is liable unless the result of the act was realized by the servant, or was so apparent that no man of ordinary prudence situated as he was would have undertaken it.

Appellee Keller & Brady Company claims that appellant is not entitled to recover because he knew the roof had not been scaled and knew that it was dangerous; that no prudent person would have undertaken to remove the debris, although he had been ordered to do so by his master. We are unable to tell from the evidence what effect the assurance of the safety of the place by Nease, his superior, had upon appellant. But whether he believed there was no danger or not after Nease's examination and assurance of safety, he testified that he believed there was none and so acted. He was commanded to do the work by his superior, and what he ought to have done in the emergency, is not for us to decide, it is a question for the jury.

The Nebraska court, in the case of Chicago R. I. & R. Ry. Co. v. McCarty, 49 Neb., announced the rule, which is a reasonable one, to be as follows:

''Our conclusion after a consideration of the subject is, that it is a harsh and unreasonable rule which charges a servant, when commanded to perform an act by his

master, with the duty of at once determining whether or not the act can be safely performed, and then performing it at his peril, or refusing to perform it at the expense of losing his employment. The risk incurred by obeying a negligent command of the master is not one ordinarily incident to the servant's employment, and not an assumed risk, because negligence on the part of the master is not presumed to be a feature of the employment. * * * With the case however, of a command given suddenly, which must be obeyed immediately or not at all, a different question is presented. The servant is confronted with a new danger one not contemplated when he entered the employment, and one not made part of it by continued use. The servant has certainly in the first place, the right to presume that the master gave the command advisedly and in the exercise of due care. If the servant disobeyed, he forfeits his employment. * * * In many a case a man of ordinary prudence compelled to decide instantly, even though aware of the existence of danger, would prefer obedience, and would take the risk.''

In Sherman & Redfield on Negligence, section 186, we find the following:

''The true rule, in this, as in all other cases, is that, if the master gives the servant to understand that he does not consider the risk one which a prudent person would refuse to undertake, the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon the master's opinion. So, if the peculiar risk of the act commanded by the master is not obvious, the servant has a right to assume that he is not sent into any unusual peril, and he is not bound to investigate into the risk, before obeying his orders. A servant is not called upon to set up his unaided judgment against that of his superior; and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. If the master directs the servant to do some act which is dangerous, but which could be made less dangerous by the use of special care on the part of the master, the servant has a right to assume that such special care will be taken, and does not take the greater risk upon himself. If the master calls suddenly upon the servant under circumstances which give no time for consideration, * * * he is bound to indemnify the servant for injuries sustained through obedience to such a call. The servant's dependent and inferior position

is to be taken into consideration; and if, the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not obviously so dangerous that no man of ordinary prudence would have obeyed.''

As stated, appellees ask an affirmance of this case because, as they claim, the testimony shows that appellant was guilty of contributory negligence, and that the injuries received by him were the insult of an assumed risk incident to his employment. They cite many authorities to sustain their position, but the rules announced therein can not control the case at bar, unless the danger was so obvious and imminent that no person with ordinary prudence would have undertaken the risk and obeyed the orders of his superior, as appellant did.

The first case cited by appellees' counsel is Tanner's Admr v. Wickliffe Coal Co., supra. In that case Tanner and the men under him were working near Longest, his superior. The court, in that case, said:

''These general principles, about which there can be no controversy, do not, however, meet the real point in this case. Although Tanner was inferior to Longest in authority, he was in charge of a gang of men, and knew the roof of the tunnel in which he was working was unsafe and dangerous. If Tanner had been directed by Longest or his superior officers to do the work, with an assurance that the place was safe, or would presently be made so, or if he was ignorant of the dangers of the employment, a different question would be presented.''

Thus it will be observed that if Longest had commanded Tanner to do the work, a different case would have been presented, and it would have been a question for the jury to determine whether or not the danger was so obvious and imminent that an ordinarily prudent person would have undertaken the work, which would have been a case like the one at bar. In the same case, the court further said:

''A servant who is experienced, and knows and appreciates the dangers of an employment, and without asking assurance of safety from the master or promise of improvement undertakes the labor, must be held to have assumed the risk.''

It also appears in that case that if the master or Longest, the vice principal, had assured Tanner of the safety of the roof, the result of the case would have been different.

The case of Breckinridge & Pineville Syndicate v. Murphy, supra, was an action by appellee to recover of the Syndicate damages occasioned by slate falling from the roof of a mine. He simply alleged that the roof was unsafe and that appellant knew, or by the exercise of ordinary care, could have known it; that he did not know of the unsafe condition, and that his injury was occasioned by the negligence of appellant, but the testimony showed that a superior directed Murphy to proceed with the work and assured him that the roof was safe, a case like the one at bar. In reversing that case, the court said:

"It is possible that under the proof in this case a promise may be inferred to make the roof safe, but it is not so averred in the pleadings or relied on as inducing a continuation of the appellant's work, in his dangerous position.

"Upon the state of the pleadings the request for a peremptory instruction should have prevailed."

We understand this as an intimation that if the pleadings in that case had been like those in the case at bar, a different result would have obtained.

The case of Ashland Coal & Iron Co. v. Wallace, supra, has no application to the questions involved in the case at bar.

The case of Lindsay v. Hollenbach & May Contract Co., supra, was one wherein a foreman ordered the owner and driver of a team of mules to remove a dump down an embankment, and in an attempt to obey this order one of the mules was hurt. This order and attempt to move the dump were given and made in bright day light, and the danger, if any, was as obvious to the owner and driver of the mules as it was to the boss. This case is in line with the authorities cited above, and sustains a theory opposed to that contended for by appellees.

In the case of Clifton v. C. & O. Ry. Co., supra, the appellant, the injured party, testified, in substance, that he knew the dangerous character of the work before he engaged in it, and that the foreman and others told him to keep a lookout; that the loose rocks were apt to fall at any time. Of course, he could not recover under such a state of case.

Appellees cite Labatt on Master & Servant, Vol. 1, Sec. 260 and Sec. 283, and Sherman & Redfield on Negligence, Vol. 1, 5th Ed., Sec. 185. These authorities are not in conflict with, but support the theory and distinctions above mentioned.

In the case of Ballard & Ballard v. Lee's Admr., 115 S. W., 732, the court said:

"If the master, being present, gives direction to the servant to go on with the work that the master knows is dangerous, he will be liable, although the servant is also aware of the peril, unless the work is so obviously dangerous that no man of ordinary prudence would have undertaken it."

Thus it will be seen that this court has always made a distinction where the master or, as in the case at bar, the vice principal is present and gives directions to the servant to proceed with work which he knows to be dangerous. In such cases the master is liable, notwithstanding the fact that the servant is aware of the danger, unless the danger he is subject to in obeying the orders is so obvious that a person of ordinary prudence would not undertake it.

In view of the authorities above cited, the lower court erred in giving the peremptory instruction in behalf of Keller & Brady Company.

Under the testimony of this case and the authority of the cases of Keller & Brady Co. v. Berry, 121 S. W., 1009, and Burton's Admr v. Edington-Griffith Construction Co. 118 S. W., 1001, the peremptory instruction given in behalf of the L. & N. R. R. Co. was proper, as Keller & Brady Co. was an independent contractor. The railroad company had nothing to do with the work in the tunnel, except to receive it as completed, and appellant was not their employe.

For these reasons, the judgment in favor of the L. & N. R. R. Co. is affirmed, and the one in favor of Keller & Brady Company is reversed and remanded for further proceedings consistent herewith.