## Oyen v. Willings.

(Decided March 28, 1919.)

### Appeal from Daviess Circuit Court.

1. **Master and Servant—Safe Place to Work—Assumption of Risk.—** It is the duty of the master to furnish the servant a reasonably safe place in which to perform his work, but if the place is unsafe and the danger in continuing the work is obvious and patent, the servant by continuing will assume the risk, and if injured, the master will not be liable.

2. **Master and Servant—Reliance Upon Knowledge of Master.—** If the master directs the servant as to the manner and method of performing the work, the servant has a right to rely upon the superior knowledge of the master and to assume that the performance of the work in the way directed will not be dangerous, unless the danger in performing it in that manner is so obvious and patent that an ordinarily prudent person would not undertake it, in which event the master will not be liable.

3. **Master and Servant—Obvious Danger.—** Where plaintiff with a heavy load on his shoulder undertook to cross over a rapidly moving belt about thirty inches high and ten inches wide, whereby he was thrown and sustained injuries, he can not recover of the master on the ground that he was directed to do so, since the danger in the undertaking was so obvious that a person of ordinary prudence and with due regard for his own safety would not have undertaken to carry out the directions of the master.

W. T. ELLIS, FLOYD J. LASWELL and W. FOSTER HAYS for appellant.

CLEMENTS & CLEMENTS and BEN D. RINGO for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Raymond Willings, was employed by appellant and defendant below, C. V. Oyen, as a member of the crew operating a dredge boat with which defendant was digging or enlarging a ditch in Daviess county, and while so engaged he sustained injuries to his leg and other parts of his body by which the leg between the knee and ankle was broken in one or two places and plaintiff was thereby rendered more or less a permanent cripple. He brought this suit against defendant seeking to recover damage for his injuries, alleging in substance that defendant failed to furnish him a safe place in which to do his work and that he had been directed by the foreman in charge to do the spe-

cific work at which he was engaged when he received his injuries in the way and manner in which he was performing it, which he alleged was dangerous and known by defendant's foreman to be dangerous, but which danger he himself did not know or appreciate.

The answer denied the negligence relied on and pleaded both contributory negligence and assumed risk, which, being denied, formed the issues, and upon trial the jury, under instructions from the court, returned a verdict in favor of plaintiff for the sum of $2,000.00. Defendant's motion for a new trial having been overruled, he prosecutes this appeal, seeking a reversal of the judgment upon the two grounds that the court erred in overruling defendant's motion for a peremptory instruction in his favor, and having failed to sustain the motion for the peremptory instruction, the court misinstructed the jury to defendant's prejudice.

It appears from the testimony that defendant was engaged in cleaning out an old ditch, or rather making it deeper. The machinery employed was what is known as a dry land dredge, being a boat about eighteen or twenty feet wide and some thirty or thirty-five feet long, resting upon axles at either end, which at the time were about thirty-five feet long, with wheels on them, the dredge being astride the old ditch in which the work was being done. On the rear of the dredge was an engine and near the front end was the machinery to which the derrick was attached, as well as the wire ropes and other appliances which operated it. Between the engine and the derrick machinery there was a large belt or band running, with its lower ply about twelve inches from the floor of the dredge and its upper one, by actual measurement, thirty inches from the floor, although according to some of the witnesses who testified merely from observation the upper ply of the belt was something near twenty-seven inches from the floor. The wheels supporting the dredge ran on rails which were laid upon planks at the edges of the banks of the old ditch.

On the morning in question, about ten o'clock, the bank on the right side of the dredge was threatening to give way, and plaintiff and a fellow workman, whose duty it was to keep the track on that side in repair, were told by the foreman to procure some old plank with which to prop and hold the bank so that it would not give way. According to plaintiff's testimony the foreman directed

him to go on the other side of the ditch for the plank, but according to the testimony of the foreman and other witnesses introduced by the defendant no direction was given as to the place where the plank was to be obtained, there being evidence that there were planks suitable for the purpose on either side of the ditch. However this may be, the proof shows that the foreman directed the two to get two pieces of plank, and they went on the other side of the ditch, the plaintiff procuring two pieces, one seven and the other eight feet long, each being two inches thick and about ten inches wide, and started, with them on his shoulder, across the dredge and undertook to step over the belt in the space between the engine and the machinery at the front end at a point where the top ply was between twenty-seven and thirty inches from the floor. In doing so, with the load he had, his foot slipped, causing him to fall on the belt, it being in rapid motion, and received his injuries. His fellow workman, who preceded him, also stepped over the belt, but he was carrying only one small piece of plank, about three feet long, and he got across without sustaining an accident.

Plaintiff had been at work on the dredge for four days. He was reared upon a farm, and had worked in a coal mine and at a saw mill. At the latter place his work was in connection with the saw rig, and this gave him some experience in the operation of machinery, including belts.

It is insisted by plaintiff that the only practical way by which the dredge could be crossed from one side to the other was by stepping over the belt in the manner he did, while defendant's testimony shows that there was a way to cross the dredge at the rear of the engine and also in front of the crane, but to cross at the latter place it was necessary to step over a small wire rope about two feet from the floor and under another one about six feet from the floor, neither of which was being operated at the time, since the power from the engine was disconnected with the machinery operating the crane. Under these facts it is seriously insisted by plaintiff's counsel that the direction from the foreman to procure the plank was tantamount to a specific direction for plaintiff to go on the other side of the ditch and cross over the belt in returning with the plank, and that this case comes within the rule of the cases of Runians v. Kelly & Brady Co., 141 Ky. 827; L. & N. R. R. Co. v. Adams, 148 Ky. 513;

Consolidation Coal Co. v. Moore, 166 Ky. 48; Wasioto & Black Mt. R. R. Co. v. Hall, 167 Ky. 819, and many others of like character from this court, it being contended that the servant in obeying specific orders from the master is not chargeable with unrestricted assumed risk in such cases because the presumed superior knowledge of the master as to the safety of the place or the method of doing the work will excuse him if under the circumstances he should undertake it.

The theory upon which the servant is relieved of the defense of assumed risk in the cases referred to, and under the circumstances contended for by plaintiff, is well stated in the Runians case, *supra*, wherein this court, quoting from Sherman & Redfield on Negligence, sec. 186, said:

"The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with the work under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not *obviously* so dangerous that no man of ordinary prudence would have obeyed." Again, the court said: "This court has always made a distinction where the master or, as in the case at bar, the vice principal is present and gives directions to the servant to proceed with work which he knows to be dangerous. In such cases the master is liable, notwithstanding the fact that the servant is aware of the danger, unless the danger he is subject to in obeying the orders is so obvious that a person of ordinary prudence would not undertake it."

But for that restriction of the defense of assumed risk to apply for the benefit of the servant, two things must concur, viz., the servant must have been directed to do the particular work in the manner in which he was performing it, and the danger to which he is subjected in obeying the orders must not have been so obvious that a person of ordinary prudence would decline to undertake the work. Other cases announcing the same rule are Hutchison v. Cohankus Mfg. Co., 112 S. W. (Ky.) 91, and C. & O. Ry. Co. v. Shepherd, Admr., 153 Ky. 350. The cases referred to and relied upon grow out of facts where the danger attendant upon performing the work in the manner directed by the master "is somewhat hazardous or dangerous, although not obviously so, or the danger of continuing is not so apparent that a

person of ordinary intelligence would not undertake it, and the servant is assured, in substance or effect, by the master who is present, that it is reasonably safe, or that there is no danger, or is directed by him to go on with the work.'' In such cases the servant is justified in accepting the assurance of the master, and will not be charged with assuming the risk if injury occurs.

As we have heretofore said, it is extremely doubtful whether there is any ground for the claim in this case that plaintiff, at the time of his injury, was performing his work under the direction of the foreman of the defendant, for it must be remembered that the foreman was not present with the servant while he was performing the work of going after the necessary planks. Neither did the foreman instruct him as to how he should get the plank from one side of the boat to the other, nor did he in any manner indicate to plaintiff that he should overload himself. On the contrary, plaintiff and his companion were told, according to the undisputed evidence, to get only two small planks. Moreover, the testimony preponderates to the effect that plaintiff could have crossed the boat at the rear of the engine, or, with slight inconvenience, could have crossed at the front end of the boat by stepping over the steel rope which was not then in motion, and passing under another in like condition about six feet from the floor. But, however this may be, the rule relieving the servant from the assumption of the risk in such cases, as we have seen, has no application where the danger attendant upon the work is so *obvious* that a person of ordinary prudence would not have undertaken it, although directed to do so by the master. C. & O. R. R. Co. v. Shepherd, Admr., *supra;* Toler v. Swann-Day Lumber Co., 30 Ky. Law Rep. 810; Hutchison v. Cohankus Mfg. Co., *supra;* Kelly v. Barber Asphalt Co., 93 Ky. 363; McCormack Harvester Co. v. Liter, 23 Ky. L. R. 2154; Davis v. C. & O. R. R. Co., 166 Ky. 490, and White v. Louisille Gas & Electric Co., *idem.* 499.

In the Toler case the plaintiff was performing his work in the immediate presence and under the direction of defendant's manager and foreman. In that case defendant was engaged in the saw mill business, and a piece of timber caught in one of the saws. The foreman took hold of it and directed plaintiff to open some clamps. Back of the clamps was a circular saw in motion, and in

attempting to do his work plaintiff came in contact with the saw and was injured. He testified that he knew of the presence of the saw and that it was running, and that if he came in contact with it he would be injured, but he furthermore said that he was unacquainted with the danger attending the operation of saw mills. The court in denying the liability of the master said:

"The accident was altogether due to appellant's failure to exercise ordinary care for his own safety, and falls well within the line of Wilson v. Chess-Wymond & Co., 25 Ky. Law Rep. 1655; Duncan v. Gernert Bros. & Co., 27 Ky. Law Rep. 1039, and other like cases which hold that there can be no recovery by a servant for injuries received from obvious danger, when neither the premises nor the machinery is unsafe nor out of repair."

In the Hutchison case plaintiff sustained his injuries by his hand coming in contact with a cylinder studded with sharp teeth. It was right in front of him and he knew the liability of getting hurt if he came in contact with it. This court said: "Besides, it is not sufficient for a party seeking damages merely to state that he is inexperienced, or that he did not know of the danger. There are some things which a man of maturity must know. He must understand and appreciate the everyday laws of nature. He must know, unless he be shown to be of weak mind, that fire will burn, boiling water will scald, that a knife will cut, and that a revolving cylinder with sharp teeth will injure the hand if it is permitted to come in contact with it." The court then refers to and quotes from the cases of Wilson v. Chess-Wymond Co., and Kelly v. Barbour Asphalt Co., *supra*.

In the last named case plaintiff was injured by his shirt being caught in a revolving shaft over which he was required to bend in drawing buckets through an opening, and the court said: "It was revolving right before his eyes, which he was bound to see and did see while he was performing his duty. . . . It also conclusively appears that the only prudence that was necessary to be exercised in reference to this piece of machinery was to keep off of it, and that the common instincts of safety would have suggested to him to do that and the exercise of ordinary prudence would have enabled him to do that."

In the White case plaintiff sustained his injuries while removing a wooden horse from near the edge of a newly

dug trench by stepping so close to the edge of the trench that the embankment gave way, causing him to fall in it. A demurrer was sustained to the petition, and on appeal this court, in affirming the judgment, said:

"There is nothing in the petition to indicate that there was any hidden or unseen danger at the point where appellant alleges he fell into the ditch; on the contrary, it is apparent from the petition that the situation there was open and obvious, and whatever danger there was could have been seen and appreciated by any person of ordinary intelligence." Further along in the opinion the court, with approval, takes this excerpt from the case of Wilson v. Chess-Wymond Co., *supra*:

"As said by this court, in the case of Wilson v. Chess-Wymond Co., 117 Ky. 567, 'The lowest order of intelligence of a rational man would have comprehended that boiling water would scald the flesh if it came in contact with it, and that ice was slippery. The conditions were openly visible to the laborer. He had only to use his eyes and his most common experience and his earliest instincts to fully appreciate the danger of his position.'"

It is true that in the Wilson case the foreman was not present and directing how the work should be done. But if he had been, under the rule of the cases referred to, if the danger was so obvious that a person of ordinary prudence would have seen and appreciated it, the servant would have assumed the risk by continuing in the work. The dangerous nature of the circular saw in the Toler case, the shaft in the Kelly case and the newly dug ditch in the White case was no more obviously so than the rapidly moving belt in this case. Nor was the method of performing the work in either of those cases any more dangerous than the attempt of plaintiff in this case to cross the moving belt with a heavy load of lumber. Suppose that instead of the object attempted to be crossed being a smooth belt it had been a band saw, the danger in that case would have been different only in degree and not in kind. The servant would have been no more likely to come in contact with the saw in attempting to step over it than he would to come in contact with the belt in undertaking the same task. In the one case his injuries might have been more severe but none the more certain.

The case of L. & N. R. R. Co. v. Adams, *supra,* does not announce a different doctrine. In that case it is

said **that** the master will be excused if "under all the facts and circumstances the servant knows and realizes the danger, and with this knowledge and realization voluntarily assumes it."

The plaintiff in this case ran no risk of being discharged if he did not attempt to cross the belt with his load. He could easily have brought the plank to the belt and passed it over to his companion on the other side; admitting that there was no other way by which the lumber could be transferred from one side of the boat to the other. But even if he had to choose between losing his job and incurring the hazard of almost certain injury it was his duty to decline the undertaking and accept the consequences. Masters are not the insurers of the safety of their servants. They have a right to rely upon the principle of self-preservation actuating the servant in the performance of his work, and when the servant disregards that principle and blindly engages in an undertaking, which is patent, obvious and dangerous, he can not excuse himself upon the ground that the master alone is to blame. All machinery in operation is more or less dangerous if one comes in contact with it, and when the danger is active, as is true with machinery in operation, and is patent and reasonably certain, the common instincts of personal security should warn even the ordinarily intelligent to desist from an undertaking which would bring him in such dangerous contact. We think this case comes within the principle of the cases to which we have referred, and that the motion made by defendant for a peremptory instruction in his favor should have been sustained.

Wherefore, the judgment is reversed, with directions to grant a new trial, and for proceedings consistent herewith.