## Louisville Water Company v. Darnell.

(Decided December 3, 1920.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. Master and Servant—Assumption of Risk—Contributory Negligence.—If the work being performed and the place where it is done are not necessarily dangerous and are so simple that any person of ordinary intelligence can readily see and understand the dangers attendant upon its performance the master is not liable for an injury to his servant who possesses ordinary intelligence for any injuries sustained, since the injury is one assumed by the servant or was produced by his contributory negligence, dependent upon the facts.

2. Master and Servant—Inspection—Assumption of Risk.—If the servant is at work under the immediate inspection of the master and in obedience to his specific directions and according to a method which he adopted, the servant will not assume the risk, unless the danger was so obvious as that an ordinarily prudent man would not undertake it; and whether this be true is ordinarily a question for the jury, but where the facts are uncon-

tradicted and clearly established that no reasonably prudent man would undertake the work though supervised and directed by the master, it is within the province of the court to direct the jury accordingly.

3.  Master and Servant—When Master Not Liable for Injuries to Servant.—Where the master does not direct the method of performing the work and there is a safe and unsafe way of performing it and the servant of his own volition chooses the unsafe way the master will not be liable for any injuries sustained.

4.  Master and Servant—Assumption of Risk.—The doctrine of assumed risk does not apply where the inevitable consequences of the work are to render the place unsafe.

5.  Master and Servant—Assumption of Risk.—The plaintiff was engaged in digging up a stone gate post and after he removed the dirt from around it, it fell and caught him between the post and the bank of the excavation which he had made and injured him. Held that the employer was not liable because (1) the servant selected his own method of removing the dirt from around the post and (2) the work in hand was so simple that an ordinarily intelligent person would comprehend the dangers incident to its performance.

FRED FORCHT and CHARLES W. MORES for appellant.

SAMUEL G. TATE and JOHN C. TATE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and plaintiff below, Isaac Darnell, is a person of mature years and on December 15, 1915, was an employee of the appellant and defendant below, Louisville Water Company, and with a crew of hands was assisting in laying a large water main along the Brownsboro road in or near the corporate limits of the city of Louisville. According to the testimony of plaintiff he was directed by defendant's foreman to assist another to remove the dirt from around a stone gate post which stood immediately in the way of the ditch which others were digging in which to place the water main. While digging around the post plaintiff reached the bottom of it and it careened and caught him against the bank of the hole he had dug and injured him. To recover damages for the injuries sustained he filed this suit, alleging that defendant had violated the duty it owed him to furnish him a reasonably safe place in which to work and in adopting and directing plaintiff to pursue a dangerous method of performing the work; that defendant knew of such dangers, which were unknown to plaintiff, and by reason of which he was entitled to recover for the dam-

ages he sustained. The answer contained a denial of the averments of the petition and also affirmative pleas of contributory negligence and of assumed risk. The affirmative defenses were denied by a reply and upon trial there was a verdict in favor of plaintiff for the sum of twenty-five hundred dollars ($2,500.00) upon which judgment was rendered, and defendant's motion for a new trial having been overruled it prosecutes this appeal.

The two principal grounds urged against the judgment are, (1) error of the court in overruling defendant's motion for a directed verdict, which motion was made at the close of plaintiff's testimony and renewed at the close of all the testimony, and (2) the refusal of the court to submit to the jury, as requested in an offered instruction, the defense of assumed risk. We have closely studied the record, briefs of counsel and the cases relied on therein, as well as many others, and we have unhesitatingly come to the conclusion that the evidence fails to establish any cause of action in favor of plaintiff, and that defendant's offered peremptory instruction should have been given. The stone post which plaintiff was assisting to remove had been used as a gate post and was something like two or two and one-half feet square at the bottom, but smaller at the top and projected above the ground, according to the testimony, between six and eight feet and was embedded in the ground about two and one-half or three feet. It would be difficult to imagne a more simple or less complicated piece of work than that of digging up a post. It is no less complicated than the work of felling a tree. The one performing the work, if he has ordinary intelligence (as plaintiff is shown to possess) knows that the natural law of gravitation would cause the post to careen and fall when the dirt supporting it was removed from around and underneath it, just as a tree would fall when the trunk is severed from the stump. This court has held in a number of cases, following all of the authority upon the subject, that a servant of ordinary and average intelligence is conclusively presumed to know or to take notice of the ordinary and well understood laws of nature and to govern himself accordingly in the performance of his work. Furthermore, a servant will also be charged with knowledge of the existence of that which is before his eyes and which he could not help seeing and appreciating. Some of the many cases from

this court so holding are: American Milling Co. v. Bell, 146 Ky. 68; Wallsand Coal & Coke Co. v. Shields' Admr., 159 Ky. 644; North Jellico Coal Co. v. Disney, 161 Ky. 605; Hassett & Co. v. Richardson, 169 Ky. 342; New Hughes Jellico Coal Co. v. Gray, 173 Ky. 337; Oyen v. Willings, 183 Ky. 742; Pruitt v. Norfolk & Western Ry. Co., 188 Ky. 204; Hutchison v. Cohankas Mfg. Co., 112 S. W. (Ky.) 91; Wilson v. Chess-Wymond Co., 117 Ky. 567, and many others referred to in those opinions. Some of the cases cited, if not all of them, also announce the principle that the ''safe place'' doctrine does not apply when the particular work of the servant, in the prosecution of which he is injured, has for its very purpose the creation of the danger from which the servant was injured; nor does the ''safe method'' doctrine apply where the servant selected his own method of doing the work. Without encumbering this opinion with a recitation of the facts in each case we will incorporate from some of them the language of this court embracing the rule just adverted to. In the American Milling Company case the court said: ''The rule is also that the master is not responsible for a danger which the servant himself creates in the progress of the work. If the master exercises ordinary care to furnish the servant a reasonably safe place to work and the servant in the course of his work makes the place unsafe, and is injured by reason of a peril which he himself created, the master is not liable. (Big Hill Coal Co. v. Abney, 125 Ky. 355; Smith v. North Jellico Coal Co., 131 Ky. 196.)'' In the Shields case the language is: ''Where a minor is engaged in pulling a (coal) stump, the stump itself is his working place. The perils to which he is subjected are those of his own creation. They grow out of the progress of the work. The duty of the master to use ordinary care to furnish the servant a reasonably safe place to work does not apply where as a result of the servant's work the character of the place is constantly changed, and the place itself becomes dangerous either necessarily or from the manner in which the work is done. Smith's Admr. v. North Jellico Coal Co., 131 Ky. 196; Labatt Master and Servant, section 588; Cleveland, C. C. & St. L. R. Co. v. Brown, 20 C. C. A. 147. Here the outside of the rock did constitute a part of the entry, but the rock itself was above the coal in the stump. It would not have fallen had not the coal been removed. The coal was removed by Shields. Having removed the coal

and thus created the danger, it was Shields' duty either to sound the top and remove the rock, or use props to prevent it from falling." In the Disney case it is said: "He (the servant) created the danger himself, and his death was due wholly to a condition which he himself brought about." In the Richardson case, the court, under facts very similar to those we have here, in excusing the master from liability and directing a peremptory instruction in its favor, said: "A grown man of average intelligence is bound to take notice of the ordinary laws of nature. He must know that if a sufficient force is applied by a steam shovel to an overhanging rock the rock will fall, and if it does fall, it will injure those who are near enough to be struck by it. Clearly the safe place doctrine has no application to the facts of this case. Under such circumstances the master is not charged with the duty of warning the servant of such a plain and obvious danger. The method of doing the work had nothing to do with the accident. The rock did not fall because of any negligence on the part of the master, but solely because the effort to dislodge it was successful. Not only was there no negligence on the part of defendant, but plaintiff, with full knowledge of the conditions, took a position of obvious peril and consequently assumed the risk of injury." In the Wilson case the language employed by the court is: "The lowest order of intelligence of a rational man would have comprehended that boiling water would scald the flesh if it came in contact with it, and that ice was slippery. The conditions were openly visible to the laborer. He had only to use his eyes and his most common experience and his earliest instincts to fully appreciate the danger of his position." There is nothing to the contrary to be found in any of the opinions from this court, nor have we found a contrary rule applied by any other court or adopted by any text writer. It is but the application of the same principle upon which the "simple tool" doctrine is founded, and is especially applicable to the facts in this case. Every ounce of dirt taken by plaintiff from around the post at which he was at work rendered his labor more hazardous by weakening the stability of the post and producing a condition which would cause it to fall. But, counsel for plaintiff seeks to excuse his client from the operation of the principle announced in the above cases upon the ground that he was directed by defendant's foreman to do the particular work in the manner that

plaintiff was performing it and that it was being done under the immediate inspection and direction of defendant's foreman, and reliance is had on a number of cases from this court, some of which are: Long's Admr. v. Illinois Central R. R. Co., 113 Ky. 806; Illinois Central R. R. Co. v. Langan, 116 Ky. 319; Keebler v. Illinois Central R. R. Co., 27 Ky. L. R. 305; L. & N. R. R. Co. v. Cox, 145 Ky. 716; City of Owensboro v. Gabbert, 136 Ky. 346, and Runians v. Keeler and Brady Co., 141 Ky. 827. The doctrine of those cases, and others which might be referred to, is in substance that a servant is not called upon to set up his own judgment against that of his superiors and may rely upon their advice and especially upon their orders, notwithstanding misgivings of his own mind, *unless* the work or the method employed is so obviously dangerous that a reasonably prudent man would not undertake it. All the cases hold that notwithstanding the directions of the master, or his personal presence supervising the work, if the conditions are such as just indicated, the servant by continuing in the work assumes the risk and the master will be relieved from responsibility. It is furthermore true that generally it is a question for the jury as to whether the conditions were such as to create an assumption of risk by the servant, but this is not always true. When the facts are simple, plain, easily understood and undisputed and they create conditions such as a reasonably prudent man can arrive at but one conclusion, it is the province of the court to determine whether the servant assumed the risk in the particular case. Thus in the Gray case, *supra,* after stating the rule applicable when the work is being done under the immediate direction or under the immediate supervision of the master and in the manner which he directs, and after stating the facts of that particular case, the court said: "Under these circumstances, it seems to us that there is no room for honest difference of opinion among reasonable men as to the quality of his act. Notwithstanding the foreman's promise to timber, he voluntarily exposed himself to an obvious, known and imminent danger, which he knew was likely to cause injury at any moment, and was, therefore, guilty of contributory negligence as a matter of law." To the same effect is the opinion in the Oyen case where it was claimed that the foreman of defendant directed plaintiff as to the way and manner in which he should perform his work, in the performance of which he stepped over and

across a moving band with which he came in contact and sustained his injuries.

Neither this nor any other court has gone to the extent of holding that the "immediate presence" doctrine, the "specific direction" doctrine or similar ones, could be given the effect to deprive the employee of his reasoning faculties or to permit him to depend, in every contingency, exclusively upon his employer for his personal safety by renouncing all incentive for self preservation, or losing all capacity therefor. So, that if it be assumed that plaintiff in this case was working under the immediate directions of defendant's foreman and using the method of performing the work as prescribed by him, the defendant would not be liable under the rule applied in the cases relied on. The method employed by plaintiff in removing the dirt from around the post was the digging of a small, narrow trench or excavation next to the post with perpendicular banks in such a manner as to stabilize his position and pen himself in so as to disable him from getting out of the way of the post when it got ready to fall, which he knew it would inevitably do if the dirt was removed from around it and from under it. Plaintiff knew, as one of ordinary intelligence, that in the very nature of things that event would happen sooner or later and that it would most likely occur when his pick caught under the foundation of the post, which he says it did. Under such circumstances, the method adopted would necessarily be so dangerous as that an ordinarily prudent person would not adopt it and if he did he would become the author of his own disaster and would assume the risk.

We do not agree with counsel that defendant's foreman directed the method by which the work was to be performed. There is nothing in the testimony showing such to be the case. Plaintiff testified that Mr. Flynn, the foreman, "asked him to go down and take— and help the old man to dig out the post." The old man referred to was another employee who assisted plaintiff in the work. The foreman was at least one hundred feet from the post at that time and there is no proof that he ever went any nearer to it. There was nothing said about the character of excavation which should be made around the post or that it should be of such a nature as to confine plaintiff so that he would experience difficulty in escaping danger. It is true that plaintiff testified that he scented danger, and when the foreman

asked him to assist in digging up the post that he (plaintiff) said, "Would not it be a pretty good idea to take that block and tackle down and hook on the post and kind of brace it until we could pull it over?" when the foreman answered, "go down there and do the work like I told you." The law is well settled, as shown by some of the cases, *supra,* that when there is a safe and an unsafe method of performing work and the servant of his own volition selects the unsafe method he can not hold his employer liable in the absence of specific directions from the latter to employ the unsafe method. The most ordinary intelligence would have suggested in this case the necessity of adopting some method which would enable plaintiff in digging up the post to get out of its way when its support was so weakened as to cause it to fall. If he chose and adopted a method which would decrease his opportunity to get out of the way of the falling post he was guilty of such negligence as would prevent his recovery. The danger which overtook the plaintiff in this case was no less patent than the moving band in the Oyen case, or the hot water vat in the Wilson case.

Our conclusion therefore is that the peremptory instruction should have been given, and the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.