## C., N. O. & T. P. Ry. Co. v. Perkins' Administrator.

(Decided December 9, 1921.)

### Appeal from McCreary Circuit Court.

1. Appeal and Error—Law of the case.—The opinion on the first appeal of a case becomes the law of the case in a subsequent trial where the facts are substantially the same, not only with respect to errors relied upon for a reversal on the first appeal and which are mentioned in that opinion and to errors relied on therein, but not noticed in it, but also as to all errors appearing in the first record which might have been but were not then relied on. If, however, the first opinion on its face shows that the question was not determined, but left open, it is not res judicata as to subsequent trials.

2. Master and Servant—Safe Place to Work—Notice.—Where the place at which the servant is working as it stands when the work begins is perfectly safe for the particular kind of work being performed, and the danger can only arise as the work progresses,

and be caused by the work done and the environment of the servant must necessarily undergo changes as the work proceeds, the master is not bound to protect him against the dangers resulting from those changes, since it is not the duty of the master to stand by during the progress of the work to see when a danger arises and to shield the ordinarily intelligent servant therefrom. This is especially true if the danger is patent and easily discernible to one of ordinary intelligence and when it is the result of natural laws of which the servant is presumed to take notice.

3. Master and Servant—Action for Damages for Death of Servant—Negligence.—In a suit to recover damages for the death of a servant alleged to have been caused by the negligence of the master, there must be some evidence tending to show that the death of the servant was the proximate result of the alleged negligence. Where a servant's ankle was injured by the negligence of the master and more than ten months thereafter his death was caused by consumption of the lungs, there should have been a verdict for the master in a suit to recover damages for the death of the servant, as the evidence failed to show that the consumption was produced by the injury.

TYE & SILER and EDWARD COLSTON for appellant.

HENRY C. GILLIS and JOHN W. SAMPSON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On a former appeal of this case a judgment in favor of the appellee, plaintiff below, against appellant, who was defendant below, was reversed because the evidence was insufficient to show that the disease (pulmonary consumption), with which the plaintiff's decedent died, was the proximate result of the injury he received while serving defendant as a section hand. The opinion is reported in 177 Ky. 88. Another trial resulted in a verdict for plaintiff for the sum of $2,500.00, and defendant's motion for a new trial was overruled and it prosecutes this appeal.

The former opinion settled all questions then presented by the record, except (1), actionable negligence of defendant, and (2), whether the injury resulting from such negligence, if any, was the proximate cause of the servant's death. In the former opinion, to which we refer, will be found a detailed statement of the testimony bearing upon the latter proposition, as it then appeared, and the conclusion was reached that, "The evidence wholly fails to show, directly or by fair or reasonable inference, that his death from consumption was the result of this

injury," and for that reason alone the judgment was reversed. Those two contentions are again urged by defendant's counsel as grounds for reversing the last judgment, as is also a third one, *i. e.,* that the verdict is excessive. Other minor errors are complained of, both in the motion for a new trial and in brief, but we deem it unnecessary to refer to or determine any of them.

1. Considering the grounds in the order named, it is insisted by plaintiff's counsel that the first one was likewise foreclosed by the former opinion, since it was presented in that record and not determined by that opinion, though it was raised in each trial by a motion for a directed verdict in favor of defendant. We do not agree with counsel that the former opinion adjudicated that question against defendant. The rule in this jurisdiction is, "That the opinion upon the first appeal is the law of the case, not only with respect (1), to errors relied upon for a reversal on the first appeal and which are mentioned in the first opinion; (2), to errors relied on but not noticed in the opinion; but (3), also as to errors appearing in the first record that might have been, but were not then relied upon. . . . This rule applies to all cases where the opinion does not expressly state that a particular point is not passed upon; and, an opinion upon a first appeal conclusively settles the question of the sufficiency of the pleadings, the competency of the testimony, and its sufficiency to take the case to the jury." The rule was so stated in the case of Consolidated Coal Co. v. Moore, 179 Ky. 293, and it is quoted with approval in Miller's Appellate Practice and Forms, section 138, pages 241-2. Other cases in point are Davis v. McCorkle, 14 Bush 746; Goff v. Lowe, 141 Ky. 799; Schrodt's Exec. v. Schrodt, 189 Ky. 457; Lexington & Eastern Ry. Co. v. Edna Robinson Sexton, (ante 201), and numerous other cases referred to in them.

Under this rule, if the former opinion in this case had failed to *notice* the question and had made no mention of it, the right to raise and rely on it subsequent to that time (the facts being substantially the same) would be settled against defendant. On the other hand if the question was left open by the first opinion, or if it was shown therein that it was not determined upon its merits, it is not foreclosed and may be again relied on as though that opinion had not been rendered.

The case of Nashville, Chattanooga & St. Louis Ry. Co. v. Banks, 168 Ky. 579, relied on by counsel for plain-

tiff, announces no different doctrine from that stated above, but, on the contrary, it supports the rule as we have stated it herein when the opinion says: "The rule long since established in this court is, that where the first opinion does not contain any notice of errors relied on for reversal by the appellant, if these same errors appear upon the second appeal and relied on for reversal, they will be considered as having been decided adversely to the contention of appellant upon the first appeal." The former opinion in this case *did notice* the question now under consideration and it *expressly* declined to pass upon it, and reversed the case solely for the reason hereinbefore stated. The opinion says on that point: "It will be readily seen from this evidence, which is all there is in the record on the subject, that if we should *assume,* as we do assume for the *purposes of this decision,* that the injury received by Perkins was caused by the negligence of the company, the evidence wholly fails to show, directly or by fair or reasonable inference, that his death from consumption was the result of this injury." The words which we have italicized, conclusively show that the court expressly refrained from determining the question upon the merits and assumed its existence only "for the purposes of this decision," which necessarily left it open "for the purpose of" future decisions.

Having disposed of this preliminary question, we come now to a consideration of the merits as shown by the testimony in the record. The decedent at the time he was injured was a stout, healthy young man about eighteen years of age and weighed between 150 and 160 pounds. He had been working for defendant as a section hand about eighteen months according to a signed written statement made by him. On the particular occasion the section crew was engaged in loading ties on a flat car. They were taken from a stack on the right of way and carried to the car, where they were taken by two of the hands upon the car and stacked thereon. The method employed was to build up the load from either end of the car inclining it upwards from a space in the middle where the two hands on the car worked; and they themselves did the stacking of the ties. When the stacks met in the middle of the car the same hands would then roll down the higher ends of the stacks to the middle so as to fill up that space and thus finish the load. That method of loading ties was not only the usual and customary one

employed but appears to have been the only one adopted for that purpose. Each of the men on the car would take hold of one end of the tie and toss it up on the stack or walk up the stack, which was constructed, according to the testimony, somewhat after the fashion of a stairway, and place it where, in their judgment, it was necessary in order to successfully accomplish the work. Some of the ties had not been properly adjusted in the stack by the decedent and his co-laborer on the car, who was assisting him in the work, and without any moving of the car some of them rolled down and caught plaintiff's left ankle inflicting a bruise thereon, and in extricating himself he either jumped or fell to the ground when it is claimed he injured his left side. Upon these facts it is claimed that defendant was negligent in failing to furnish decedent a safe place in which to perform his work, and in adopting an unsafe method of performing it.

On the other hand defendant contends that the risk was assumed by the decedent from the fact that the place was safe and the work was simple, involving no complicated machinery, nor did there exist any latent defects and that the unsafe condition, if any, was being produced by decedent and his co-laborers because of the unsafe way in which they placed the ties themselves, and the danger, if any, thus produced was patent and was such as the master was not required to guard against under the ''safe place'' doctrine. To this contention we agree.

A case very much in point is that of Truesdell v. C. & O. Ry. Co., 159 Ky. 718. In that case a section hand was injured by the rebounding of a rail, which he was assisting in removing, when it was thrown upon another one. It was shown that the use of tongs in handling the rails would have rendered the work at which the servant was engaged less hazardous, but, in stating the duty of the defendant, the opinion says: ''The failure of the defendant to furnish tongs for handling the rails cannot, under the facts of this case, be regarded as negligence. The master is not bound to provide the very best implements or means which can be procured, or those which are absolutely the most convenient and safe. His duty is sufficiently discharged by providing implements or means which are reasonably safe for those exercising ordinary care for their own safety. . . . Whether, therefore, the rail rebounded because it came in contact with the tie or the rail brace is immaterial. The result is the same in

either case. Plaintiff knew of the presence of the ties, and also of the presence of the rail brace. Persons handling heavy objects like a railroad rail must necessarily take notice of the simple law of nature that. the rail may slip or rebound or turn over when it comes in contact with the ground or ties or any other object upon which it is caused to fall;'' and the directed judgment in defendant's favor was affirmed.

In the case of Smith's Admr. v. North Jellico Coal Co., 131 Ky. 196, this court, in discussing the relative rights of master and servant when the work of the latter was constantly producing the danger which one of ordinary intelligence could see and appreciate, said: ''Labatt, in his work on Master and Servant, section 588, says: 'One special application of the general conception underlying the rule stated in the preceding section is that, where the work is of such a character that as it progresses the environment of the servant must necessarily undergo frequent changes, the master is not bound to protect the servant engaged in it against the dangers resulting from those changes.' In Durst v. Carnegie Steel Co., 173 Pa. 162, 33 Atl. 1102, it was held that where the place as it stands when the work begins is perfectly safe, and the danger can only arise as the work progresses, and be caused by the work done, it is not the duty of the employer to stand by during the progress of the work to see when a danger arises; that it is sufficient if he provides against such danger as may possibly or probably arise, and gives the workmen a means of protecting themselves. In Cleveland, C. C. & St. L. R. R. Co. v. Brown, 20 C. C. A. 147, 73 Fed. 970, it was held that the duty of a master to provide his servants a safe place in which to work does not attach where the place becomes dangerous in the progress of the work, either necessarily or from the manner in which the work is done.''

The doctrine of that case was referred to with approval in Wright v. Cumberland Telephone and Telegraph Co., 137 Ky. 299, in which the court in its opinion said: ''The rule that the master must use ordinary care to furnish the servant a reasonably safe place to work is subject to the exception that the servant takes the risks resulting from changes made by the servant himself in the ordinary progress of the work. Smith v. North Jellico Coal Co., 131 Ky. 196, 114 S. W. 785. Here the place where the servant was to work was perfectly safe when he began the work. The danger that arose was caused

wholly by the act of the servant and his fellow servant in the progress of the work. They alone were directing the work. Servants who pull down or dismantle houses or other structures under a general direction to do the thing, but taking their own course in doing it, assume risks not assumed by servants in putting up new work under the direction of the master.'' Other illustrative cases are: C., N. O. & T. P. Ry. Co. v. Callahan, 148 Ky. 682; Same v. Goldston, 156 Ky. 410; L. & N. Ry. Co. v. McIntosh, 183 Ky. 571; Evans Chemical Works v. Ball, 159 Ky. 399; L. & N. Ry. Co. v. Sawyers, 169 Ky. 671; L. H. & St. L. Ry. Co. v. Wright, 170 Ky. 230; Harriss v. C., N. O. & T. P. Ry. Co., 176 Ky. 846; Hassett & Co. v. Richardson, 169 Ky. 342; Jones v. Southern Railway Company in Kentucky. 175 Ky. 455; Proctor Coal Co. v. Beaver's Admr., 151 Ky. 839, and Louisville Water Co. v. Darnell, 189 Ky. 771. All the cases hold that the servant in performing his work must not only exercise ordinary care for his own safety but that he is presumed to be familiar with natural laws, including the law of gravitation, which would inform him that if he handlde the article with which he was at work in such a way as to deprive it of support it will fall, and in this case decedent could not help knowing that if he stacked the ties insecurely the law of gravitation would cause them to roll down and to fill the space in which he was standing. The insecure method, finally resulting in the fall of the ties, was a condition created by his co-laborer and himself, resulting from no specific directions from any superior servant or vice principal of the master.

Plaintiff's counsel in arguing this point says:

''We insist that the defendant was negligent, under the evidence, in having the ties loaded in the manner and according to the plan adopted; that it was negligent in piling ties up on each side of the space to be rolled down later; that it was negligent in not taking proper precautions to see that the ties were so placed that they were not likely to roll because of the presence of a crooked tie in the pile, and that it was negligent in not having a foreman present to perform his duty of watching the work and directing it so that unnecessary danger would be eliminated. The deceased certainly did not assume the risk attending all this negligence.''

In the light of the foregoing authorities,we are unable to grasp the force of that argument. It appears to be assumed therein that some other representative or servant

of defendant was engaged in the work of loading the ties and that decedent had no connection therewith, and was injured because of some supposed negligent manner in which some third person had performed the work. It fails to recognize that the things therein complained of as constituting negligence were done and performed by the decedent himself, and that all unsafe conditions were brought about by his unskillful method of stacking or loading the ties. It is therefore our conclusion that the court erred in overruling defendant's motion for a directed verdict in its favor, which motion was made both at the close of plaintiff's testimony and at the close of all the testimony.

2. The question of proximate cause, which was the only one discussed in the former opinion, in view of what has been said might be passed without determination, in so far as it relates to the last trial, but we seriously doubt if the additional evidence heard on that point materially affects the results. It is true that on the last trial one or two witnesses say that they observed a bruised spot on decedent's left side, but it is not shown that he claimed that the spot which the witnesses saw was a result of or produced by the accident. The additional medical testimony upon the whole, as we view it, adds no strength to the testimony on the former trial, and it was shown for the first time on the last trial that decedent made two written statements in July after the accident occurred in May, 1913, in which the only injury he claimed to have received was the one to his ankle. Moreover, on January 29, 1914, which, according to the testimony, was long after the development of consumption, plaintiff, by his father as next friend, filed suit against defendant to recover damages in the sum of $1,000.00 for the injuries he sustained, and the only allegation in that petition of any injury was the mashing and injuring of his foot and ankle. No mention was made therein of any injury to his side or of any pulmonary trouble as a result thereof, and it was only upon the filing of *this* suit after his death, which occurred in March, 1914, a little less than two months after *his* suit was filed, that any claim was ever made that the disease was a result of the injury.

Neither of the writings referred to was introduced upon the first trial, nor was the fact that plaintiff's mother, who died after the first trial, was afflicted with and died from the disease known as pulmonary consumption. Under such circumstances, as stated in the former

opinion, it would be a mere guess to say that the disease with which plaintiff died was a proximate result of the alleged injury.

The determination herein of the first proposition renders it unnecessary to consider the questions sought to be raised on the cross-appeal involving plaintiff's right, which he attempted to set up in an amended petition, to recover damages for pain and suffering of decedent from the time he was injured to his death. Likewise it is unnecessary to devote any time in discussing the alleged excessiveness of the verdict.

Wherefore, the judgment is reversed with directions to sustain the motion for a new trial and for proceedings not inconsistent with this opinion.