# Kentucky Home Mut. Life Ins. Co. v. Suttles et al.

February 4, 1947.

L. H. Hilton and Woodward, Dawson, Hobson & Fulton for appellant.

Grover C. Wilson and Wade & Mapother for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This is the third appeal of this case. See Kentucky Home Mutual Life Insurance Co. v. Suttles, 288 Ky. 551, 156 S. W. 2d 862, and Suttles v. Kentucky Home Mutual Life Insurance Co., 300 Ky. 696, 189 S. W. 2d 845. The facts and circumstances involved in this litigation are fully set out in those opinions, so it will be unnecessary to review them here.

In the first case we reversed a judgment in favor of the beneficiaries in a life insurance policy which Suttles had taken out with the Company because the proof failed to show that the Company had knowledge that Suttles had made false statements in an application for a renewal of his policy. He stated he had not been rejected by any other Company, when, in fact, several companies had rejected him as an insurable risk. We may say at this point that there is nothing in the record which shows that Suttles had actual knowledge that he had been rejected, but we may assume for the sake of argument that he did have such knowledge since that is not the controlling question involved herein; but rather the question is, Has it been shown that the Company had knowledge of the rejections, and, notwithstanding that knowledge, reinstated the policy?

On the second trial the appellees produced evidence concerning information which the Company had received through the Medical Information Bureau relative to Suttles' physical condition. After it had obtained this information it requested its doctor in Hazard to re-examine Suttles. This additional evidence is carefully reviewed in the second appeal, so it will be unnecessary to review it here. A directed verdict in favor of the Company was reversed for the following reason: "The fact of the rejections on the part of the other two insurance companies, based upon the M. I. B. reports, which was a service the appellee herein used; the time that elapsed from the receipt of the application to the reinstatement of the policy, which was time obviously required and used for additional investigation, and within which the letter to Dr. Hobbs, above, was written, it appears to us that the company possessed such knowledge as would meet the test above, and such as would justify a submission of the cause to the jury." The test referred to in the foregoing quotation is that, where the insurer is fully cognizant of all the facts, it can not be said as a matter of law that it relied upon the statements contained in the application, even though false and fraudulently made.

On the third trial the evidence heard on the second one was introduced. In addition the Company introduced Robert R. Long, chief underwriter and secretary of its policy department. Mr. Long testified, as did Dr. McKinney, its medical director, on the second trial that the Company had no actual knowledge of the rejections until after Suttles' death. The code book of the M. I. B. was introduced by Mr. Long and he testified that there was no code number which would indicate the action taken by the reporting companies and that the numbers referred only to various types of disabilities or ailments. The code book shows the character of cases to be reported and directs that they are to be reported "entirely without regard to whether the company accepts, suspends or declines the risk, or offers some modified plan of insurance." When Dr. McKinney's deposition was taken as if on cross-examination he said that, through his training and long years of experience as a medical examiner for insurance companies, he could tell the action taken by the reporting company from the informa-

tion reported. Furthermore, he said that, when the applicant is accepted, no report is made; that if an application is not accepted it is rejected; and that rejections are always reported to M. I. B. He said also that no sub-standard company would have issued a policy to Mr. Suttles and that his Company was not a sub-standard company. However, Mr. Long, who personally had nothing to do with the issuance of the policy in question, testified at some length concerning certain correspondence with other companies relating to the question and said that the Company did write sub-standard business which, in some instances, it reinsured with other companies.

The position of the Company is that the evidence does not show that it had knowledge that Suttles had been rejected by other companies before it reinstated its policy, and further the pleadings of the appellees on this point were insufficient. On the other hand, the appellees take the position that we are bound by the opinion on the second appeal on both the questions of pleading and proof. On the question of the sufficiency of the pleadings see Cincinnati, N. O. & T. P. R. Co. v. Perkins' Adm'r, 193 Ky. 207, 235 S. W. 776, and Equitable Life Assurance Soc. of United States v. Fannin, 252 Ky. 600, 67 S. W. 2d 964. As a matter of fact we think the pleadings sufficiently raised the question.

We do not think Mr. Long's testimony was sufficient to destroy that introduced at the second trial. He admitted that the Company had the M. I. B. card, though, as indicated, he said there was no code number actually showing a rejection. In the second opinion we carefully reviewed Dr. McKinney's testimony and held that it, along with the other testimony, was sufficient to take the case to the jury. We fail to see how it can be contended seriously that there was not more than a scintilla of evidence showing that the Company had knowledge of the rejections by other companies before it reinstated Mr. Suttles' policy. It is our view that there is considerably more than a scintilla of evidence on the question.

Judgment affirmed.