## Blenke v. The Citizens Life Insurance Company.

(Decided November 14, 1911.)

Appeal from Kenton Circuit Court
(C. L. & E. Division).

1. Insurance, Life—Effect of Questions and Answers in Application.—
The insured, as a general rule, is bound by the answers he makes to questions in the application for insurance; and if the answers are both material and untrue, the collection of the policy may be defeated, although the applicant may have answered in good faith and without concealment or fraud.

2. Same—Knowledge or Belief of Applicant as to Truth of Answers.— If an answer is material and untrue, and relates to some transaction or act that the applicant at some time had knowledge of, the fact that he may have forgotten it when the application was prepared will not save the insurance, if its collection is resisted upon the ground that the applicant made material and untrue answers. But if the applicant is asked if he had a certain disease, and in good faith answers No, and there is no evidence that he ever knew or had information that he had had such disease, the fact that his answer is literaly untrue will not defeat the collection of the policy.

3. Instructions.—When there is evidence showing that the insured when he applied for insurance made answers to material questions that he must have known were untrue, it is proper to instruct the jury to find against the company "unless the jury shall believe from the evidence that said answers or some of them at the time the answers to said questions were made were substantially untrue, and that the defendant acting reasonably and naturally in accordance with the practice usual among life insurance companies under similar circumstances would not have accepted said application and issued the policy sued on if the substantial truth had been stated in said answers, in which event the jury will find a verdict for the defendant, even though the jury shall believe that said untrue answers or any of them, if any such there was, were not made with the knowledge of their falsity or with the intention to mislead or deceive the defendant company."

L. J. CRAWFORD, HAZELRIGG & HAZELRIGG for appellant.

MACKOY & MACKOY and HELM BRUCE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On the 11th of November, 1905, Joseph A. Blenke applied for a policy of life insurance in the appellant company; and as a part of his application, he submitted to an examination by the medical examiner of the company, and in answer to the question in the application—

"6 B. Have you ever applied to any company or agent for insurance without receiving a policy of the exact amount and kind applied for?" he said, "No."

He also made the following answers to the questions propounded to him by the medical examiner at the time of his application—

"Q. 2. Have you ever applied to any agent for insurance without receiving a policy within thirty days?"

"Ans. No."

"Q. 3. Have you ever been rejected by any company or association (This is important)?"

"Ans. No."

"Q. 4. Has any physician given an unfavorable opinion upon your life with reference to insurance, formally or informally?"

"Ans. No."

"Q. 9. State particulars of any illness, constitutional disease, or injury, you have had, giving date, duration and remaining effects, if any?"

"Ans. Smallpox, 25 years of age; concussion of the spine 20 years ago."

"Q. 34. Are you in perfect health, so far as you know or believe?"

"Ans. Yes.

"Q. 47. Have you ever had any of the following diseases: (answer 'yes' or 'no') Diseases of bladder or kidney?"

"Ans. No."

"Q. 55. Have you ever had any of the following diseases: (answer 'yes' or 'no') Fainting, palpitation or pain in the region of the heart, or any indication of heart disease?"

"Ans. No."

The application signed by Blenke and constituting a part of the policy, contains the following provisions:

"On behalf of myself and of any person who shall have or claim any interest in any policy that may be issued under this application, I hereby declare and agree that all the foregoing statements and answers, together with those contained in the declarations to the Citizen's Life Insurance Company's medical examiner to be full, complete and true, whether written by my own hand or not; and they are offered to the company as a consideration for and as a basis of the contract with said company under any policy issued under this application, which, if issued I hereby agree to accept."

The company accepted the application and on November 21st, 1905, issued a policy to the applicant for $10,000.00, payable at his death to his sister, Annie Blenke, the appellant. The first premium was paid when or before the policy was issued, and the second annual premium which was tendered in due time was refused by the company because it then had information that the insured had Bright's disease at the time of his application and had been previously rejected by another company. The insured died in January, 1907, and the company declining to pay the insurance, this action was brought by the beneficiary.

For defense to the cause of action, the company set up the provisions in the policy, before quoted, and alleged that each of the answers to the questions hereinbefore set out was false and was a misrepresentation which was both material and fraudulent, and that if the defendant had known the truth it would not have issued the policy.

After the issues were made up, the case went to trial, and the court gave the jury the following instruction, to which the plaintiff below, now appellant, objected—

"1.  The jury are instructed that the deceased, Joseph A. Blenke, in the application for the policy sued on in this case, was asked and answered the following questions:

'Have you ever applied to any company or agent for insurance without receiving a policy of the exact kind and amount applied for?' To which question he answered in said application 'No.'

'Have you ever applied to any agent for insurance without receiving the policy within thirty days?' To which question he answered in said application 'No.'

'Have you ever been rejected by any company or association? (This is important.)' To which question he answered in said application, 'No.'

'Has any physician given an unfavorable opinion on your life in reference to insurance, formally or informally?' To which question he answered in said application 'No.'

'Have you ever had any of the following diseases, to-wit: diseases of the bladder or kidney?' To which question he answered in said application, 'No.'

'State particulars of any illness, constitutional disease or injury you have had, giving date, duration and remaining effects, if any.' To which he answered in said application: 'Small-pox 25 years ago; concussion of spine 20 years ago.'

'Are you in perfect health as far as you know or believe?' To which question he answered in said application, 'Yes.'

'Have you ever had any faintings, palpitation, pain in the region of the heart, or any indication of heart disease?' To which question he answered in said application, 'No.'

"Now, the jury will find a verdict for the plaintiff for the sum of $10.000.00, with interest thereon from the 4th day of May, 1907, unless the jury shall believe from the

evidence that said answers, or some of them, at the time the answers to said questions were made, were substantially untrue, and that the defendant, acting reasonably and naturally in accordance with the practice usual among life insurance companies under similar circumstances, would not have accepted said application and issued the policy sued on in this case, if the substantial truth had been stated in said answers; in which event the jury will find a verdict for the defendant even though the jury shall believe that said untrue answers, or any of them, if any such there was, were not made with a knowledge of their falsity, or with the intention to mislead or deceive the defendant company.''

The jury returned a verdict for the company, upon which judgment was entered and the plaintiff appeals.

The only ground of reversal relied on is that the court committed serious error in the latter part of the instruction given in which the jury was directed to find a verdict for the defendant ''even though the jury shall believe that said untrue answers, or any of them, if any such there was, were not made with a knowledge of their falsity or with the intention to mislead or deceive the defendant company.'' The objection urged by counsel to this language is that although the insured may not have known that his answers or any of them were false and may not have had any intention to mislead or deceive the company, and although he answered in perfect good faith, the jury must under the language quoted return a verdict in favor of the company. It is contended in effect that the question of good faith and honest intention of the insured in answering these questions should have been submitted to the jury in connection with their materiality. In other words, it is argued that so much of the instruction as directed the jury if they believe the answers were untrue, although not made with knowledge of their falsity or with the intention to mislead or deceive, should have been omitted, and in place thereof the jury should have been told in substance to return a verdict for the defendant company if they believed that said untrue answers, or any of them, were made with a knowledge of their falsity or with the intention to mislead or deceive the company. Or, to state it differently, that although the answers were material and false, the jury should find for the plaintiff if they believed from the evidence that they were made in good faith, without any intention to mis-

lead or deceive the company, and free from concealment or fraud. It will at once be preceived that if the contention of counsel is correct, the instruction given was very prejudicial to the rights of the beneficiary, as there is a radical difference between the instruction given and the one that counsel insists should have been given. In support of the argument that the instruction should have been modified as indicated, it is said that question 34 in the medical examiner's report: "Are you in perfect health, so far as you know or believe," should be read in connection with and as a part of every other question answered by the insured, and thus make each answer true only to the extent of his knowledge and belief. Before taking up these questions, it may be said that on the trial it was conceded that in 1886 the insured made application for insurance to the Mutual Life Insurance Company of New York, and his application was rejected—the reason for the rejection being that the medical examiner of the company discovered symptoms that indicated a disease of the kidney, material to the risk. It was also shown that the insured knew that his application for this insurance had been rejected, and the reasons for its rejection. And further shown that in 1891 or 1893 the insured desired to become a member of the Catholic Knights of America, an insurance organization, and for this purpose went to see the medical examiner of the organization, who was a friend, and who told him that before he put in his application he desired to examine his urine, and that after examining it he informed Blenke that he must not apply to the order as he was in no condition, or not a fit subject for insurance. It is also shown that subsequent to this and before applying for insurance in the appellee company, he was treated by one or more physicians for disease of the kidney, and that his death was due to this cause. There was also evidence to the effect that if truthful answers had been made to the questions in reference to his rejection by the Mutual Life Insurance Company, as well as to the ones in reference to diseases of the bladder or kidney, that the company would not have accepted the application or issued the policy.

Under the evidence and the instruction given the jury could not well have done otherwise than return a verdict in favor of the company, because the evidence showed that at least two of the answers to material questions

were untrue, and the jury were instructed to the effect that if these answers were untrue they should find for the company, although they were not made with a knowledge of their falsity or with any intention to mislead or deceive. On the other hand, although these answers were untrue, yet if the jury had been instructed that they might return a verdict for the plaintiff if they believed the answers were made in good faith without knowledge of their falsity and without any intention to mislead or deceive the company, there was evidence sufficient to warrant the jury in finding a verdict against the company.

Taking up first the argument of counsel that question 34, "Are you in perfect health, so far as you know or believe" should be read in connection with and as a part of every other question and answer made by the applicant, and the effect of each other question and answer should be so qualified and limited as to make the question read similar to question 34; or to illustrate—that question 2, reading "Have you ever applied to any agent for insurance without receiving a policy within thirty days?" should be construed to read "Have you, so far as you know or believe, ever applied to any agent for insurance without receiving a policy within thirty days?" To thus construe all the questions and answers would plainly make a material change in their meaning and effect. The questions as written in the application are simple, direct and positive, and the answers made by the applicant were intended to be equally simple, direct and positive. Many of the questions do not leave any room for doubt or speculation as to what is intended, nor do they leave the sufficiency of the answers to the good faith or honest intention or belief of the applicant. Question 34 merely calls for an expression of opinion on the part of the applicant as to the condition of his health. He is not asked "are you in perfect health," but "are you in perfect health, so far as you know or believe." Very few persons could answer with absolute certainty that they were in perfect health at the time the inquiry was made, although they might be able to say with entire truth that they were in perfect health so far as they knew or believed. Whether a person is in perfect health or not is often a matter of opinion or belief on his part. If he has not been treated for some disease, or has some information that he has some ailment, he cannot know with certainty whether he is in perfect health or not, although he

may honestly believe that he is. A person might in truth not be in good health—he might have some insidious disease that he did not know of—he might be afflicted with some fatal ailment that had not then made its presence known or felt—and of course under circumstances like these his affirmation that he was in good health so far as he knew or believed would be entirely true as far as his good faith and honest intentions were concerned, and yet tested by actual conditions might be false. But a very different situation is presented when the applicant is asked a question involving an act done by him in the past concerning which he must have had personal knowledge at some time, or a transaction had by him that he could not have been connected with without knowledge of its existence, or a thing that transpired in which he was a participant and that he must be charged with knowledge of. For instance, if an applicant for insurance had theretofore applied for insurance in another company—this is a transaction that happened, and that he knew of when it happened, with absolute certainty, although the transaction may afterwards be forgotten by him, and when inquired about it after the lapse of time or years he may not remember it at all. And so with reference to the fact that he had previously been examined by or consulted physicians in reference to his health, or had knowledge or information that he was afflicted with some ailment or disease. It is manifest that there is a wide difference between a past transaction or act that a party actively and personally participated in, and therefore must be presumed to have knowledge of, and the present condition of his health that he cannot in the nature of things have more than an opinion or belief concerning, unless it be that he has been advised concerning it or has consulted physicians about it. To apply the language ''so far as you know or believe'' in question 34 to the other questions, or any of them, in the application that calls for information concerning acts or transactions that the applicant was an active and participating party in, and that he must be presumed to know of, would be to make a material and important change in each of these questions and answers, and in fact make an entirely new contract for the parties. The meaning and effect of each question and answer is to be determined by the language employed in the question and answer, unless it be that the question is one that under all the facts and circumstances, can only be answered according to the appli-

cant's honest belief concerning the things inquired about. Of course, there might be an application in which there was some general or blanket clause intended to apply to and modify each particular question, but no such case is presented by the application we are considering. There is no language in the application or policy from which it can be inferred that it was contemplated by the parties to the contract that the language in question 34 should be read into and as a part of every other question in the application.

Coming now to the next question presented, which is, that the applicant is only bound to exercise good faith in answering questions or to answer them to the best of his knowledge and belief and without concealment or fraud, a review of the cases written by this Court will be helpful in ascertaining how far we are committed to the doctrine that the insured is bound by the very terms of his answers and the question of his good faith and honest belief in their truthfulness will not be allowed to modify their meaning.

In 1874 the legislature enacted a law providing that—

"All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentation, unless material or fraudulent, prevent a recovery on the policy."

This statute has been in force from that time to this, and is now section 639 of the Kentucky Statutes. In 1882 this Court in the case of Germania Insurance Company v. Rudwig, 80 Ky., 223, said:

"There is no doubt that an insurance company relies upon the truth of the representations made in either case, and equally certain that, if untrue and material to the risk, no inquiry will be directed for the purpose of determining whether the statement was fraudulently or innocently made.    *    *    *    *    *    *    *    *    *    *
Forfeitures are regarded by courts with but little favor, and while the non-payment of premiums or a representation of facts fraudulently or innocently made, if untrue and material to the risk, or such as would induce the insurer to enter into the contract, must prove fatal to the policy when minute and trivial questions are propounded and answered having no bearing or influence on the minds of those about entering into the contract, and not material to the risk, the parties cannot be affected by them. An honest belief in the truth of the statement

made, when not material to the risk, should not avoid a policy if the statement should prove to be untrue, and to adjudge that it works a forfeiture is contrary to the intent and meaning of the parties, and subversive of that rule of good faith and fair dealing that should enter into and form a part of every insurance contract."

In Providence Savings Life Assurance Company v. Dees, 120 Ky., 285, the application among other things contained questions relating to the use of intoxicating liquors by the applicant, and the answers to these questions were attacked by the company as false—the evidence showing that the applicant drank much more whiskey than he stated in the answers to these questions. In the instruction the court told the jury that if the answers were "honestly made without any intention to deceive or defraud the defendant company, and that said answers were substantially true, then they should find for the plaintiff," and also that if either of the answers "was in fact untrue and was made with the fraudulent intent to deceive or mislead the defendant company, and with the intent that defendant should rely and it did rely on said answers in issuing the policy, they should find for the defendant company." In considering these instructions in connection with the statute, supra, the court said:

"The purpose of the statute was to prevent the insurer escaping liability on grounds having no real merit. To avoid the policy, the misrepresentation must be material or fraudulent. It was not the purpose of the statute to enable the insurer to avoid his liability by reason of immaterial misstatements. In the sense in which the statute uses the words no misstatement is fraudulent which is immaterial. In other words, if the statement is not substantially true, then there is a material misstatement within the meaning of the statute. * * * The misstatement itself must be material; that is, the insured must not materially misstate the facts, and, when he makes a substantial misstatement about anything material to the risk, the policy is avoided. It is not necessary that he should intend to deceive." To the same effect is Provident Saving Life Assurance Co. v. Whayne's Admr., 131 Ky., 84; Illinois Life Ins. Co. v. DeLang, 124 Ky., 569; Metropolitan Life Ins. Co. v. Schmidt, 29 Ky. Law Rep., 255; Brison v. Metropolitan Life Ins. Co., 115 S. W., 785; Supreme Lodge of Knights

of Pythias v. Bradley, 141 Ky., 334; National Protective Legion v. Allphine, 141 Ky., 777.

The rule announced in the Rudwig and Dees cases has been consistently followed and this court is firmly committed with the qualification to be hereafter noticed to the doctrine that answers that will defeat the policy must be both material and untrue, but if material and untrue, the good faith or honest intention of the applicant will not save the case for him. But, in no one of these cases was the issue directly presented that an untrue answer to a question concerning diseases that he may have had in the past would avoid the policy in the absence of some evidence that the insured at the time the answers were made had knowledge or information, or from the facts developed in the record must be presumed to have had knowledge or information, that he had the diseases, or some of them, that he said he did not have. Some courts of high authority have laid down a different rule from that obtaining in this State, holding that if the answers are made in good faith, and there is no attempt at concealment or fraud, the fact that they may be literally untrue will not defeat the policy. This rule of construction finds its strongest support in the opinion of Moulor v. American Life Ins. Co., 111 U. S., 335, 28 L. Ed., 447. In that case the court said:

"The seventh question in the application for insurance required the insured to answer 'Yes' or 'No' as to whether he had ever been afflicted with any of the following diseases—insanity, gout, rheumatism, palsy, scrofula, convulsions, dropsy, smallpox, yellow fever, fistula, rupture, asthma, spitting of blood, consumption, and diseases of the lungs, throat, heart and urinary organs. As to each, the answer of the insured was 'No.' * * * The main defense was that the insured had been afflicted with scrofula, asthma and consumption prior to the making of his application, and that in view of his statement that he had never been so afflicted the policy was by its terms null and void. There was undoubtedly evidence tending to show that the insured had been afflicted with those diseases, or some of them, prior to his application; but there was also evidence tending to show not only that he was then in sound health, but that at the time of his application he did not know or believe that he had ever been afflicted with any of them in a sensible, appreciable form. * * * The jury should have been in-

structed so far as the matters here under examination are concerned that the plaintiff was not precluded from recovering on the policy unless it appeared from all the circumstances, including the nature of the diseases with which the insured was alleged to have been afflicted, that he knew or had reason to believe at the time of his application that he was or had been so afflicted.   *   *   *

"The applicant was required to answer 'Yes' or 'No' as to whether he had been afflicted with certain diseases. In respect to some of those diseases, particularly consumption and diseases of the lungs, heart, and other internal organs, common experience informs us that an individual may have them in active form without at the time being conscious of the fact and beyond the power of any one, however skillful or learned, to discover. Did the company expect when requiring categorical answers as to the existence of diseases of that character that the applicant should answer with absolute certainty about matters of which certainty could not possibly be predicated? Did it intend to put upon him the responsibility of knowing that which perhaps no one, however thoroughly trained in the study of human diseases, could possibly ascertain?"

In line with the reasoning in the Mouler case, it is pointed out by counsel that if the answer to each question that is material to the risk must be literally true or otherwise the company is not responsible, few persons who have insurance can know with any degree of certainty whether the policy issued to them can be collected or not; and we are urgently requested to adopt a rule of construction more liberal to the insured than that laid down in the cases cited.

There is great force in the argument that the insured ought not to be bound by the very terms of an answer however material it may be that concerns matters that he does not and never did know anything about. For example, the existence of some disease he may have had in the past, but did not know of. But the record before us does not present facts that would warrant us in modifying the rule we have followed so long, although we recognize the injustice that would result if this rule should be extended to answers involving diseases the applicant may have had in the absence of some evidence of knowledge or information upon his part that he had such a disease. Nor are we committed by any previous decision to the doctrine that if the applicant should hon-

estly make an untrue answer to a question as to whether or not he had ever had a certain disease that the answer would defeat the collection of the policy although there might be no evidence that the applicant ever knew or had any information that he had such a disease. There is a wide difference between the meaning and effect that should be given to an answer to a question concerning an act, thing or transaction that the applicant had knowledge or information of at some time, or that he must be presumed from his relation to it to have had knowledge of, and an answer to a question that he never at any time had any knowledge or information concerning. In one instance it might well be said that a person cannot shield himself from the effects of a false answer relating to an act, thing or transaction that he had at some time personal knowledge of, while in the other instance it could be said with as much propriety that he should not be bound in all events by the very terms of his answer when it concerned a transaction or thing that he never did have any kind of information about. But it does not seem necessary to pursue this line of investigation further, as there is evidence in the record that the insured at some time did have knowledge and information that he had certain diseases material to the risk although he answered that he had never had such diseases. Under the facts presented, we think the instruction given was correct.

Wherefore, the judgment is affirmed.