# Commonwealth Life Insurance Company v. Goodknight's Administrator.

(Decided February 5, 1926.)

## Appeal from Shelby Circuit Court.

1. Insurance—Peremptory Instruction for Defendant Properly Refused, where Plaintiff did Not Admit that Policy had Been Procured by Fraud.—In suit on life insurance policy with defense of fraud, peremptory instruction for defendant held properly refused, where policy was in record, and plaintiff did not admit it had been procured by fraud.

2. Insurance—Verdict for Plaintiff, in Suit on Life Insurance Policy, Held Not Sustained by Evidence.—In suit on life insurance policy, with plea of fraud, verdict for plaintiff held not sustained by evidence.

3. Insurance—Insured's Good Faith Held Immaterial.—Good faith of applicant has nothing to do with wrong done insurance company, if it is deceived by applicant's false information or failure to disclose the truth; it not being necessary that applicant should intend deception.

4. Insurance—Policy Avoided if Insured Makes Substantial Misstatement About Anything Material to Risk—Whether Misstatement Material is Determined by Usual Practice in Insurance Business. —If insured makes a substantial misstatement about anything material to risk, policy is avoided, and whether misstatement is material is to be determined by jury, acting not on what it may think about materiality of false information given, or true information withheld, but by what those engaged in life insurance business, acting reasonably and naturally, in accordance with practice usual among life insurance companies under similar circumstances, would have done with application if they had known truth.

5. Insurance—Testimony as to Physical Appearance of Insured and His Brother, in Suit on Life Insurance Policy, Held Inadmissible. —In suit on life insurance policy, with defense of fraud, in that insured failed to disclose that he had cancer, testimony as to physical appearance of insured and of his brother, who had similar trouble, as to state of their flesh, appetite, spirits, etc., was incompetent.

6. Insurance—Testimony Whether Disease with which Insured Died was a Primary Attack Held Incompetent, where Validity of Policy Denied on Ground of Fraud.—In suit on life insurance policy, with defense of fraud, in that insured failed to disclose that he had cancer, testimony whether sarcoma of liver, with which insured died, was a primary attack of disease at that point or had been communicated thereto from sarcoma of the eye, was incompetent.

7. Evidence—Testimony whether Answers of Insured to Questions in Application for Life Insurance Policy were Substantially True

Should have Been Excluded.—In suit on life insurance policy, with defense of fraud, in that insured had failed to disclose in application that he had been afflicted with cancer, testimony of physician whether answers made by insured to questions in application were substantially true should have been excluded, since such fact was for jury to determine.

8. Evidence—Testimony of Witnesses as to Their Opinion About Materiality of Answers of Insured to Questions in Application for Life Insurance Should have Been Excluded.—In suit on life insurance policy, with defense of fraud, in that insured failed to disclose in application that he had been afflicted with cancer, testimony of witnesses as to their opinion about materiality of answers, made by insured to questions in application, should have been excluded.

9. Insurance—Contention that Insurer Should Not be Permitted to Rely on False Answer, Made by Insured in Application for Life Insurance, Not Sustained.—Contention that, because insured had truthfully stated in his application for life insurance that a physician, whose address was given, had removed his eye, insurer should not be permitted to rely on falsity of insured's answer about cancer and tumor, but should have sought out such physician and learned truth from him, was not sustainable.

10. Trial—Instruction Authorizing Jury to Find for Plaintiff, in Suit on Life Insurance Policy, if Substantial Truth had Been Given in Answers, or Any One of Them, in Application, Held Erroneous.— In suit on life insurance policy, with defense of fraud, based on answer to one question in application, court erred in giving to jury question and answer on which defendant based its defense, and also eight others, and then telling jury to find for plaintiff, if substantial truth had been given in answers, or any one of them.

TODD & BEARD and BURNETT, BATSON & CARY for appellant.

BECKHAM, GILBERT & MATTHEWS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The defendant below prosecutes this appeal from a judgment for $1,000.00 recovered against it by the appellee, who was plaintiff below. In the latter part of the year 1919, Frank Phillip Goodknight noticed that there was something wrong with his left eye. He paid no particular attention to it until about April 1, 1920, when he consulted Dr. Adolph C. Pfingst of Louisville, Kentucky, who makes a specialty of opthalmology. Dr. Pfingst found that Goodknight was suffering from a sarcoma of the left eye, which he '.stifies is a cancerous growth

of a malignant character, and that he so notified Mr. Goodknight. Alarmed by the information which he received, Mr. Goodknight went to Washington, D. C., and on April 17, 1920, consulted Dr. W. H. Wilmer, a man of vast experience in diseases of the eye, and the highest professional standing. This doctor advised Goodknight that he had cancer of the eye, and that it should be removed, and that if it were not removed, there was danger of its being spread or communicated to other parts of the body by what he termed metastasis, or transference of the affection through the blood stream. Mr. Goodknight returned to Louisville at once, and on April 23, Dr. Pfingst removed his eye.

Mr. Goodknight had a brother, William Goodknight, who had had a similar trouble, and he had had his eye removed on February 17, 1920, but he afterwards developed sarcoma of the liver and died therefrom on June 6, 1921.

After the operation on Frank Phillip Goodknight, he seemed to enjoy good health for some time, and in August, 1923, he made application to the defendant for a policy of life insurance and in that application was asked a number of questions, none of which concern us except this one:

Q.: "Have you had cancer or any tumor, chronic diarrhoea, piles or any bowel trouble?"
Ans.: "No."

In this application he stated that he had had an eye removed in 1920 and gave the name of the physician who had removed it, and his address, and also said that his brother had died of sarcoma of the liver, but he did not say why his eye had been removed or make any further reference to it than what we have stated. Shortly after receipt of the application the defendant issued and delivered to the insured a policy of life insurance for $1,000.00, payable to insured's wife, Angie Goodknight, as beneficiary. The insured died on April 19, 1924. On July 27, 1924, Angie Goodknight died intestate, and plaintiff, David Bell, was appointed her administrator. On August 19, 1924, he began this action by filing suit against the defendant for $1,000.00 upon the policy issued. Defendant answered, admitted execution of the policy sued on, but alleged that the execution thereof had been obtained by fraud, by false information actively given and by wilful

failure to disclose the truth, and plead and relied upon the answer contained in the application which we have mentioned.

The case was prepared, tried and resulted in a verdict for plaintiff. In its motion for a new trial, the defendant alleged as errors: (1) Failure of the court to give the jury a peremptory instruction to find for defendant. (2) That the evidence is not sufficient to sustain the verdict. (3) That the court erred in the admission and rejection of evidence. (4) The instructions. The court's refusal to instruct the jury peremptorily to find for defendant was correct, for the plaintiff did not admit that the policy had been procured by fraud. The policy was in the record and the plaintiff was entitled to a verdict unless the defendant's plea of fraud was sustained by the evidence, and whether or not the evidence sustained that plea was a question for the jury, in the state of the proof in this case. The second ground relied on is well taken. This verdict is not sustained by the evidence.

Defendant's next complaint is of the admission and rejection of evidence. Over the objection of defendant, the plaintiff was permitted to read from a deposition, the following question and answer:

> "Suppose it was not explained to him that the cancerous or malignant condition might spread from the sarcoma of the eye and with the removal of the eye, could he not, in good faith, think, when there had been nothing to indicate to him to the contrary, that he was entirely relieved of any cancerous condition?"

> Ans. "I do not know what he might think."

The question here was: Did the insured procure this policy by active concealment or wilful failure to disclose the truth? Are his answers to the questions propounded in the application substantially true? The defendant has shown by Dr. Pfingst and Dr. Wilmer that this man had sarcoma of the eye. They have proved by those doctors that this affection of the eye was cancerous and malignant. There is some dispute in the evidence about whether sarcoma is a cancer or a tumor. All agree that sarcoma is malignant and if neglected, mortal. We know from an examination of the application, that the insured did not disclose to the examiner what he had been told by those

doctors, thus failing to disclose the truth, and we know that he actively gave false information by denying that he had ever had a cancer or a tumor. It makes no difference whether sarcoma is a cancer or a tumor, as the insured denied having had either. The good faith of the applicant has nothing to do with the wrong done the insurance company, if it is deceived by the false information given or by a failure of the applicant to disclose the truth. It is not necessary that the applicant should intend to deceive. Blenke v. Citizens' Life Ins. Co., 145 Ky. 332, 140 S. W. 561. If the insured makes a substantial misstatement about anything material to the risk, the policy is avoided, and whether or not a misstatement is material to the risk is to be determined by the jury, acting not upon what it may think about the materiality of the false information given or true information withheld, but by what those engaged in the life insurance business, acting reasonably and naturally, in accordance with the practice usual among life insurance companies under similar circumstances, would have done with this application, if they had known the truth. It follows, therefore, that the defendant's objection to the foregoing question and answer was well taken.

Witnesses were asked and permitted, over defendant's objection, to answer questions relative to the physical appearance of the insured and of his brother, the state of their flesh, appetite, spirits, strength, suffering, symptoms, etc. None of those questions had anything to do with the matter in issue. If what the insured said in the application was substantially true, the plaintiff ought to recover. If what he said was not substantially true, the defendant ought to prevail, and none of these questions or answers served to throw any light upon that question whatever.

A good bit of this record is devoted to questions about whether the sarcoma of the liver, of which the insured died, was a primary attack of that disease at that point or had been communicated to that point by metastasis from the sarcoma of the eye. None of that evidence was competent. It makes no difference whether the sarcoma of the liver was a primary or secondary attack of this disease upon the insured. The question is, was this policy obtained by fraud? It might be admitted that the sarcoma of the liver was in no wise connected with the sarcoma of the eye, and that would not change the

result, if upon the day after the insured received his policy, he had been killed in a motor car accident, the rights of the parties would not be changed. The defendant's defense is that the policy was void *ab initio*.

Dr. McMurray was asked and permitted, over the objection of defendant, to answer the following question:

"Doctor, at the time you made out this certificate it appears that the following questions were asked and answered in the following way: 'One brother died at the age of forty-six,' and 'cause of the death of sarcoma of the liver.' Question: 'Have you had cancer or any tumor, chronic diarrhoea, piles or any bowel trouble?' He answered that, 'No.' Question: 'Any difficulty in hearing or eyesight?' Answer: 'Loss of left eye.' Question: 'Paralysis or undergone any surgical operation?' Answer: 'Yes, eye removed in 1919.' Question: 'When did you last consult a physician?' Answer: '1919.' Question: 'Have you been a patient in a hospital or sanatorium, when and where?' Answer: 'Yes, had eye removed in 1920.' Question: 'Clinical history?' Answer: 'Had eye removed in 1919.' Question: 'Name and address of medical attendant.' Answer: 'Dr. A. Pfingst, Louisville, Kentucky.' In view of the facts I have given you as to his death of sarcoma of the liver and the removal of his eye by reason of this sarcoma, but having been asked and answered other questions that I have read to you, would you say that those questions and answers were substantially true or untrue?

"I would say they were true, substantially true."

Defendant's objection should have been sustained. It is not for the doctor to say whether the answers made by the insured to the questions in the application were true or not. That is for the jury to determine. All the witnesses have to do is to merely detail the facts and let the jury draw the conclusions. We cite this one example, but there are many similar questions, all of which were incompetent and should not have been admitted for the reason given.

Many witnesses were asked and permitted, over the objection of the defendant, to give their opinion about the materiality of the matters asked about in the ques-

tion stated above, to which defendant claims the applicant made a false answer. This evidence was incompetent, and should not have been admitted. It does not make any difference whether the doctor thinks the matters misrepresented are material or not. It makes no difference about what the applicant thinks about the materiality of them or what the jury thinks of it, or what any one else thinks, except what those engaged in the insurance business think about those things, and that is to be determined by what they do about accepting or rejecting risks where true information is given. The plaintiff in his brief argues very strenuously that, inasmuch as the applicant truthfully stated that Dr. Pfingst had removed his eye and gave the address of Dr. Pfingst, the defendant should not now be permitted to rely upon the falsity of the answer made by the applicant about cancer and tumor, and insists that the defendant could have sought out Dr. Pfingst and learned the truth from him, but certainly, he is not in earnest about that. This was a contract between the defendant and the applicant. The applicant knew, or ought to have known, his condition better than anybody, and his representative cannot now be heard to say that the defendant is estopped to rely upon the falsity of his answer. He was under no coercion or restraint of any kind. A simple question was propounded to him, and believing that his answer was true, defendant entered into the contract. If by the falsity of that answer the defendant was induced to do something which it would not have done, had it known the truth, if there is any one to be estopped, it is the one who is claiming under the application.

The instruction given the jury was erroneous. The defendant's defense was based upon the alleged falsity of the answer to one question, yet in the instruction, the court gave to the jury the question and answer on which defendant based its defense, and also eight others, and then told the jury to find for the plaintiff, if the substantial truth had been given in the answers or any of them. The court should have said: "You are instructed that, in order to obtain the policy sued on, the insured made a written application to the defendant wherein he was asked and answered the following question: 'Have you had cancer or any tumor, chronic diarrhoea, piles, or any bowel trouble?' Answer: 'No.' Believing this answer to be true, the defendant issued the policy, and you

will find a verdict for the plaintiff for the sum of $1,-000.00, with interest from April 19, 1924, unless you shall believe from the evidence that the answer made by the insured to the above question was substantially untrue, and that the defendant, acting reasonably and naturally, in accordance with the practice usual among life insurance companies, would not have accepted said application and issued the policy sued on, if the substantial truth had been contained in said answer, in which event the jury will find a verdict for the defendant, even though the jury shall believe that, at the time he made that answer, the insured did not think it was false and had no intention to deceive the defendant." See M. W. of A. v. Shields, 202 Ky. 795, 261 S. W. 594.

The judgment is reversed, and the cause remanded for proceedings consistent with this opinion.