## Kentucky Home Mut. Life Ins. Co. v. Suttles et al.

Dec. 5, 1941.

Woodward, Dawson & Hobson and L. H. Hilton for appellant.

G. C. Wilson for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and plaintiff below, Stella Suttles, is the widow of Delos E. Suttles, who died a resident of Hazard, Kentucky, on April 2, 1939. The other appellants and plaintiffs below are the two infant children of Delos and Stella Suttles. On November 16, 1935, the appellant and defendant below, a Life Insurance Company, issued to the deceased a policy on his life with plaintiffs as the beneficiaries, and by which it agreed to pay them, upon the death of the insured while the policy was in force and effect, the sum of $2,500, less indebtedness to the defendant, if any. The insured (the deceased, Delos E. Suttles) chose to pay his premiums quarterly, and to which defendant agreed and made it a part of the contract. The policy provided a thirty day period of grace following the due date for the payment of premiums, with which time such payment might be made without forfeiting the policy. The one due on November 16, 1937, was not paid and defendant called the attention of the insured to that fact. Notwithstanding defendant's apparent anxiety that the insured should keep his policy alive, he nevertheless failed to pay that premium and suffered his policy to become lapsed on February 16, 1938.

The policy contained a provision whereby upon the compliance with certain enumerated conditions it might be reinstated, upon either the same terms, or upon additionally agreed upon terms. On December 7, 1938, the insured made application for the policy to be reinstated

and so notified defendant. Correspondence ensued between the parties following such application, resulting in a reinstatement of the policy on February 4, 1939, and the insured died two months thereafter lacking two days. Following his death plaintiffs made proof thereof and demanded payment of defendant of the policy amount less some credit due defendant, leaving a net balance of $2,457.28. Defendant declined to pay any part of the amount demanded of it, and this action was later filed in the Perry circuit court by plaintiffs against it to recover their alleged demand. Defendant answered, admitting the issuance of the policy, and its reinstatement, but it defended on the ground that as a part of the processes of reinstatement the insured, pursuant to the provisions of the policy, and as a part of his written application therefor was asked and answered certain questions, among which were:

"Q. Have you ever applied to (or been examined by) any other Life Insurance Company for a policy or for reinstatement without the said Company issuing or reinstating a policy? A. No.

"Q. Has any other Life Insurance Company ever issued or offered to issue a policy on a plan or rate different from that applied for, or have you applied for reinstatement of a lapsed policy, and been offered a policy differing from original contract? A. No.

"Q. Have you been ill since date of above policy? A. None.

"Q. If so, state nature of illness, date and duration? A. None.

"Q. Have you consulted a physician since date of above policy? A. No.

"Q. Are you now in sound health? A. Yes."

It then averred that the answers to each of the questions were both material and false when they were made by the insured and which he knew to be false at the time; that it relied on the truth of the answers and but for which it would not have consented to or reinstated the policy. It then prayed that the petition be dismissed. In addition to denying the truth of the first two questions supra, defendant affirmatively averred that during the time following the lapse or forfeiture of the policy—and before the application for reinstatements—

the insured had applied for life insurance in two other companies engaged in the business of assuming such risks, each of which was rejected, and that insured's answer to each of them that no such rejections had occurred was, not only false, but that defendant knew they were false when he made them, and which was done by him to deceive defendant, and to fraudulently procure it to reinstate his lapsed policy.

The reply in its first paragraph denied such defense, and in a second paragraph plaintiff averred that if it should be proven that the answers made by the deceased insured were false and untrue, then defendant was estopped to rely thereon because it was not misled by the false answer or answers, since it at the time of the reinstatement of the policy "had full knowledge of the *physical condition* of the said Delos E. Suttles, and made special investigation as to his present *physical condition* and state of health before the policy of insurance was reinstated." It was then averred that defendant in reinstating the policy acted on the information revealed by its alleged special investigation instead of the answers of the insured in his application therefor. That paragraph of the reply was appropriately put in issue, but before trial defendant tendered an amended answer pleading that the false answers of the insured in his application for reinstatement of the policy were made as the result of a collusion between him and his examining physician for the purpose of deceiving and defrauding defendant and to induce it to agree to the reinstatement, but the court sustained plaintiff's objections to the filing of that amendment, to which ruling it excepted. Nevertheless it offered an instruction submitting the issue therein tendered, but which the court declined to give. The jury impaneled to try the case, under the instructions of the court, returned a verdict in favor of plaintiffs which the court declined to set aside on a motion for a new trial; hence this appeal. The motion complained of a number of alleged errors, chief among which (and the only ones we regard as material) were (1) the refusal of the court to sustain defendant's motion for a peremptory instruction in its favor, and (2) rejection by the court of defendant's tendered amended answer.

The record, like practically all others, contains other collateral questions—such as the admission or re-

jection of testimony, motions to strike, and other matters of practice—but our statement of the case is all that is necessary for the presentation of the material and contested issues. In approaching the determination of them the first inquiry is, whether or not the false answers of the insured to the first two questions—as so chiefly relied on by defendant and to which the testimony was mainly directed—is sufficient under the proof to relieve defendant from liability? It is not denied, but admitted, that the insured did make application to a couple of other insurance companies for a policy on his life between the date of the forfeiture of his policy with defendant and its reinstatement, and that each of those applications was rejected by the companies applied to. Testimony of the proper officers of those two companies that rejected such applications were taken by defendant, and one of them filed a copy of the examination of the insured in his application for a policy in his company, and which clearly showed that the insured at the time was in such a state of health and physical impairment as to make him an extremely hazardous risk for life insurance. One of his afflictions was a leaky heart, the result of a scar thereon discovered by the examining physician. It also showed other afflictions which, according to the proof, materially affected the risk which that company was requested to assume. The chief physician of defendant, who approved the application for reinstatement of the instant policy, testified that had he known of such intervening rejections above referred to he would not have consented to reinstate the policy, at least without additional investigation of the facts revealed in the applications of the insured furnished to the two companies that rejected them, and which witness could and would have ascertained if truthful answers had been made.

Before defendant's chief physician (Dr. W. T. McKinney) consented to the reinsurance in this case, and after receiving the application containing such false answers, he wrote to the examining physician at Hazard (Dr. W. H. Hobbs), in substance, that defendant had come in possession of rumors concerning a possible heart affliction of the insured in the instant policy and requested him to make a critical examination and report thereon. Hobbs answered by stating, in substance, that when the insured was about fourteen years of age, on

account of some exhausting physical exercise (playing basketball), he experienced an acute dilation of the heart from overheat and exercise which lasted for a few months, but that he had substantially recovered therefrom and that witness regarded him as a safe risk. In his testimony at the trial the witness added that possibly he would have hesitated to recommend the risk incurred by reinstatement of the policy if his examination had been one to obtain original insurance, since he was influenced to some extent in recommending the risk as a reinsured one because of the fact that the insured once had the policy and paid premiums on it—thereby overlooking the further fact that the defendant earned and compensated for the premiums so paid while the policy lasted by carrying the risk. Neither that witness, nor any other one, gave any testimony showing that defendant at the time it reinstated the policy had any knowledge whatever of the *rejections* supra made by other companies that the insured had applied to.

Section 639 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes has been a part of our statutory law for a long time. It says: "All statements or descriptions in any application for a policy of insurance shall be deemed and held representations and not warranties; nor shall any misrepresentations, unless material or fraudulent, prevent a recovery on the policy." Numerous domestic cases cited in the notes to that section interpret its provisions as meaning that a misrepresentation in an application for an insurance policy will not avoid it unless (a) the misrepresentation is material, or (b) unless it is both false and fraudulent, and that although the misrepresentation may not be material yet if it is fraudulently made by the insured it will nevertheless avoid the policy, while a material misrepresentation will have the same effect although not fraudulently made. Some of the many cases cited in those notes— and some others rendered since they were compiled— are, Security Life Insurance Company of America v. Black's Adm'r, 190 Ky. 23, 226 S. W. 355; Globe Indemnity Company v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990; Commonwealth Life Insurance Company v. Goodknight's Adm'r, 212 Ky. 763, 280 S. W. 123, opinion modified 225 Ky. 688, 9 S. W. (2d) 1013, and National Life & Accident Insurance Company v. Fisher, et al., 211 Ky. 12, 276 S. W. 981.

Turning now to the materiality of the questions in the application, to which false answers were made, we held in the cases of American Mutual Aid Society v. Bronger, 11 Ky. Law Rep. 902; Id., 12 Ky. Law Rep. 284; Blenke v. Citizens' Life Insurance Company, 145 Ky. 332, 140 S. W. 561; and Masonic Life Association of Western New York v. Robinson, 149 Ky. 80, 147 S. W. 882, 41 L. R. A., N. S., 505, that an inquiry as to prior rejections by other insurers of the insured's application for a life policy was a relevant, material and pertinent one, and that if incorrectly answered it would avoid a policy issued without knowledge of the company accepting the answers in the application as true, and all because the inquiry was material to the risk. But, under the opinions first cited supra, a *knowingly* false answer made to such a question would have the same effect whether it was a material one or not. So that, in the interpretations of Section 639, supra, the reinstatement of the policy in this case may be avoided by the defendant in any event, unless, perhaps, it reinstated the policy sued on *with knowledge* of the rejections referred to. As we have heretofore stated, there was no proof whatever that it possessed such knowledge; but, that on the contrary the physician who consented on behalf of defendant to reinstate the policy denied it and no one contradicted him. It is argued, however, that the court would be authorized to assume, or perhaps surmise, that defendant's chief physician did possess such knowledge, else (as argued) he would not have inquired of the witness, Hobbs, for additional information. But we are cited to no law wherein, in the same circumstances, we would be authorized to assume any such fact, and especially so when it was expressly denied by the only witness who testified on the issue.

In brief of counsel for plaintiff repeated and vigorous argument is made, with emphasized confidence, that defendant at the time it reinstated the policy possessed information—obtained from external sources than that contained in the application therefor—of the *"state of the insured's health,"* and that it thereby waived and became estopped to rely on the defense made herein. But counsel is unable to and does not refer to any testimony in the case to show that defendant, at the time it agreed to the reinstatement of the policy, possessed any knowledge whatever of the *rejections* supra, and which

558

the insured had denied in his application had ever been made.

Under the principles announced in the case of Commonwealth Life Insurance Company v. Spears, 219 Ky. 681, 294 S. W. 138, and authorities cited therein, defendant had the right to file its amended answer and the court erred in rejecting it. When filed, if it should hereafter be done, and there should be another trial followed by any testimony to support the defense therein pleaded, an instruction similar to the one offered by the defendant on that issue should likewise be given. The court also erred in not sustaining defendant's motion for a peremptory instruction in its favor, which it will do on another trial if one is had, provided the evidence is substantially the same as that heard at the instant trial.

A court should never regret the task of rendering a correct judgment or do so with reluctance, but judges are frequently called upon to decide cases that generate sympathy for the losing litigant, and in which they might wish that the circumstances were otherwise. In this case the plaintiffs, as widow and two infant children of the deceased, perhaps, need the proceeds of the policy sued on, and if it were lawful that they should have it we would be pleased to award it to them, but the declared law intervenes and our duty is to enforce it.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and for proceedings not inconsistent with this opinion.