## National Life Co. v. Rigney et al.

Jan. 11, 1944.

744

Charles Ferguson for appellant.

C. H. Wilson for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The appeal has been prosecuted from a judgment in the sum of One Thousand Dollars ($1,000) in favor of appellee, in a suit on a policy of insurance payable to her on the death of her foster son. At the solicitation of appellant's duly constituted agent, Arthur Ray Tabor, on October 4, 1941, applied for the policy, which was issued by appellant on October 17, 1941. Tabor died February 2, 1942. The cause of his death, according to the diagnosis of the attending physician, was myocarditis (a heart disease), resulting from septic arthritis (a systemic poisoning). In the early part of 1941 he sustained an injury to his neck while playing basketball. In August of that year a swelling appeared in the region of the injury, and, at the instance of his foster mother, he consulted Dr. Robert Mason, of Murray, Kentucky, who diagnosed the trouble as Hodgkins disease. Upon Dr. Mason's recommendation, the patient on August 25, 1941, consulted Dr. C. C. McClure, an X-ray specialist in Nashville, Tennessee, who diagnosed the trouble as "lymphosarcoma" (cancer of the lymphatic glands). Commencing on that date, and continuing through September 25, 1941, Dr. McClure treated the gland with X-ray, twenty-six treatments being given in all. At the end of the first week of X-ray treatments the swelling entirely disappeared. The patient was discharged September 25, 1941, and immediately resumed work as a laborer in a spar mine. He appeared to be in good

health, and was able to perform his duties as a laborer in his customary manner.

The following statement was contained in the written application for insurance signed by the deceased: "I hereby represent and declare that my health is good and my habits temperate, that I have read all the foregoing questions and answers, and that the answers and each of them are full, complete and true, and I agree that said answers and the answers to be given by me to the medical examiner, should a medical examination be required, shall each and all be treated as material to the risk and form a part of the policy contract if issued by the Company. * * * I further agree that the insurance applied for will not take effect until the policy is issued and delivered to me during my continuance in good health."

Question 30 in the application recites: "Have you ever had any of the following diseases?" Among the diseases listed are "(g) Goitre, swollen glands?" The answer to this question is "No." Question 31 recites: "Have you had any disease or injuries or have you received any medical or surgical advice or attention within the past 10 years? If so give details." The space for the answer to this question was not filled in. Mrs. Rigney testified that the application for insurance was made at the solicitation of the agent of appellant, who took applications from approximately ten members of her family at approximately the same time. That she was present when the application for the policy in question was made. The agent had the form and read the questions to the applicant, who described in detail every ailment and injury from which he had ever suffered, even to childhood measles, and including the injury received in playing basketball, the swelling of the lymphatic gland, and the X-ray treatments administered by Dr. McClure. She stated that the agent alone filled out the application, after having received full information of all the diseases and injuries above mentioned. The application was then read and signed by the deceased. It is admitted that the answer to Question 30 is erroneous, and that the application itself does not detail the visits to the various physicians. But there is nothing in the record to show that the patient was advised that he had an incurable disease, or that he had any reason to suspect, after the X-ray treatments, that he was not in good health; and

there is no evidence connecting the disease of which he died with the disease he suffered in August and September of 1941, whether it was Hodgkins disease or lymphosarcoma.

The rule is well settled that false answers to questions concerning matters material to the risk, or false answers fraudulently made, whether material to the risk or not, will void a policy of insurance. Business Men's Assur. Co. of America v. Conley, 280 Ky. 375, 133 S. W. 2d 554; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. 2d 990, 994. But there is an exception to the rule, and that is: Where the insurer was fully cognizant of all the facts, it cannot be said, as a matter of law, that it has relied upon the written statements contained in the application, because, where a condition provides for a forfeiture upon its violation, a waiver of the forfeiture or an estoppel to rely upon the violation of the condition may be proved by parol evidence. The rule and the exception are succinctly and fully stated in Svea Fire & Life Ins. Co. v. Walker, 235 Ky. 289, 30 S. W. 2d 1105, 1106, 1107, from which we quote:

" 'The conditions are that if certain material representations are untrue the policy will be void, or if untrue and fraudulent the same result will follow, regardless of their materiality. The insurer is not presumed to have sufficient information in reference to the article upon which the insurance is sought to enable it to determine if it is a suitable risk; therefore it is eminently proper for it to secure such information from the insured and to rely on the representations he makes, and if untrue and material or fraudulent he should be held accountable therefor, even to the extent of avoiding the policy.

" 'But if the insurer is fully cognizant of all the facts, we cannot say as a matter of law that it relies on the statements in the application; in other words, if with full knowledge of all the essential facts it accepts the premium and treats the insured as a policy holder before a loss, it will be presumed to have waived the forfeiture provisions, and therefore will not be heard to say that the policy is void on that ground, if the insured acted in good faith, even though in some material respects the statements in the application were untrue.

" 'In determining this question the courts have generally held that an agent of the insurer in filling out an

application represents it, and not the applicant, and that his knowledge is the knowledge of the company, especially where the agent of the insurer fills out the application from his own information, and it is signed by the applicant in good faith, and without an intention to deceive. Ætna Life Insurance Co. v. Howell, 107 S. W. 294, 32 Ky. Law Rep. [935] 939; Continental Fire Insurance Co. v. Stunston & Co., 100 S. W. 338, 30 Ky. Law Rep. 1176; Crawford's Adm'r v. Travelers' Insurance Co., 124 Ky. 733, 99 S. W. 963, 30 Ky. Law Rep. 943, 124 Am. St. Rep. 425; Masonic Life Ass'n of New York v. Robinson, 149 Ky. 80, 147 S. W. 882, 41 L. R. A. (N. S.) 505; Id., 156 Ky. 371, 160 S. W. 1078; Cooley's Law on Insurance, vol. 2, p. 2558.' "

The testimony of Mrs. Rigney was uncontradicted, and the soliciting agent of appellant, although present in the courtroom throughout the entire trial, was not called as a witness by appellant to deny the statements made on the witness stand by appellee. Her evidence, therefore, must be taken as conclusive of the fact that, at the time the application was made, the agent was cognizant of the true facts, and he himself wrote the false answers in the application. The age and experience of the applicant were such that he likely did not know that the answers to the questions were material to the risk; and that he made a full and true disclosure of all the facts to the agent manifests his good faith in the transaction. There is no evidence of collusion on the part of the agent and the applicant; on the contrary, the applicant did not seek the insurance; he took it at the solicitation of the company. That being true, under the exception to the rule announced above, the company cannot rely upon the violation of the condition which would otherwise forfeit the policy. The knowledge of the agent is imputed to the company, as surely as if the application itself contained the true answers.

But it is argued that the testimony of appellee is not competent, because it violates Section 606, Subsection 2 of the Civil Code of Practice, which provides, with certain exceptions, that no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done, by one who is dead when the testimony is offered to be given. But one of the exceptions to this provision of the Code is, that such testimony may be introduced for the

purpose, and to the extent, of affecting one who is living and heard such statement or was present when the transaction took place. Since all statements of the deceased testified to by appellee were made in the presence of the agent of appellant, and the transaction under consideration was participated in by him, it is manifest that the testimony was competent.

Finally, it is urged that appellee cannot recover on the policy, because she did not have an insurable interest in Tabor's life. We find no merit in this contention. As pointed out in Liberty Life Ins. Co. v. Strauss, 234 Ky. 608, 28 S. W. 2d 955, and Harrel's Adm'r v. Harrel, 232 Ky. 469, 23 S. W. 2d 922, and cases therein cited, where the insured secures a policy on his own life, and pays the premiums thereon, the beneficiary need not have an insurable interest in the life of the insured. The premium on the policy in question was paid by Tabor himself; wherefore, the rule in respect to insurable interest is not applicable to the case.

From what has been said, it is clear that the defendant was not entitled to a judgment on the pleadings, nor did the court err in overruling a demurrer to the reply, or in failing to sustain the objection to the argument of counsel founded upon the evidence introduced in avoidance of the defense based upon false answers.

The judgment is affirmed.