## Suttles et al. v. Kentucky Home Mut. Life Ins. Co.

June 1, 1945.

Thos. C. Mapother, Jr., and G. C. Wilson for appellant.

Woodward, Dawson & Hobson and L. H. Hilton for appellee.

Opinion of the Court by Judge Latimer—Reversing.

This is the second appeal in this case. The former is styled Kentucky Home Mutual Life Insurance Co. v. Suttles et al., 288 Ky. 551, 156 S. W. 2d 862, 865. It is not necessary to make a complete restatement of facts in this opinion as the basic facts may be found in the opinion on the former appeal. Judgment in the first trial, based upon a verdict by a jury, was in favor of ap-

pellants. That judgment was reversed by this court with directions to set it aside, and for proceedings not inconsistent with the opinion therein.

Upon the second trial, at the conclusion of all the evidence, the court peremptorily instructed the jury to return a verdict in favor of the appellee herein. The plaintiffs appeal from that judgment.

On November 16, 1935, the appellee issued a life insurance policy in the sum of $2,500 to Delos E. Suttles, in which his wife and two children were named beneficiaries in the policy. The policy lapsed some time during the year 1938 due to a failure of the payment of premiums. Within proper time, as provided by the policy for same, Suttles applied for reinstatement. The company instructed him to submit an application for reinstatement supported by medical examination. The requested affidavit, supported by medical examination was submitted to the company about December 7, 1938, and on February 5, 1939, Suttles was notified that his policy had been reinstated. Suttles died on April 2, 1939. The beneficiaries made claim under the policy, which was denied by the company, claiming that the applicant's answers in the application for reinstatement were false.

Plaintiffs below then filed this action in the Perry Circuit Court seeking to recover the alleged claim.

The defendant below, Kentucky Home Mutual Life Insurance Company, answered plaintiffs' petition in which it admitted the issuance of the policy and its reinstatement, but defended on the ground that the applicant, Delos E. Suttles, in answering certain questions in his written application for reinstatement, made false answers; that he knew at the time he made them they were false; that they were made to deceive the defendant company, and fraudulently to procure the reinstatement of the lapsed policy. The questions and answers involved were:

"Q. Have you ever applied to (or been examined by) any other Life Insurance Company for a policy or for reinstatement without the said Company issuing or reinstating a policy? A. No.

"Q. Has any other Life Insurance Company ever issued or offered to issue a policy on a plan or rate dif-

ferent from that applied for, or have you applied for reinstatement of a lapsed policy, and been offered a policy differing from original contract? A. No.

"Q. Have you been ill since date of above policy? A. None.

"Q. If so, state nature of illness, date and duration? A. None.

"Q. Have you consulted a physician since date of above policy? A. No.

"Q. Are you now in sound health? A. Yes."

Plaintiffs replied, in which they denied this defense, and in the second paragraph of their reply stated that if it should be proven the answers made by the deceased insured were false and untrue, even then the defendant was estopped to rely thereon because it was not misled by the alleged false answers, since at the time of the reinstatement of the policy, the company had full knowledge of the physical condition of the insured and made investigation as to his physical condition and state of health before the policy of insurance was reinstated. By further reply, plaintiffs alleged that the defendant company in reinstating the policy acted on the information as revealed by its alleged special investigation instead of the answers of the insured in his application for reinstatement. As will be observed from the opinion in the former appeal, evidence upon the essential element, namely, the company's knowledge, was lacking in any probative force. Thus, the reversal of the former judgment.

Judge Thomas, in handing down the opinion on the former appeal, stated as follows:

"So that, in the interpretations of section 639, supra, the reinstatement of the policy in this case may be avoided by the defendant in any event, unless, perhaps, it reinstated the policy sued on *with knowledge* of the rejections referred to. As we have heretofore stated, there was no proof whatever that it possessed such knowledge; but, that on the contrary the physician who consented on behalf of defendant to reinstate the policy denied it and no one contradicted him. * * *

"In brief of counsel for plaintiff repeated and vigorous argument is made, with emphasized confidence, that

defendant at the time it reinstated the policy possessed information—obtained from external sources than that contained in the application therefor—of the *state of the insured's health,*' and that it thereby waived and became estopped to rely on the defense made herein. But counsel is unable to and does not refer to any testimony in the case to show that defendant, at the time it agreed to the reinstatement of the policy, possessed any knowledge whatever of the *rejections* supra, and which the insured had denied in his application had ever been made. * * *

"The court also erred in not sustaining defendant's motion for a peremptory instruction in its favor, which it will do on another trial if one is had, provided the evidence is substantially the same as that heard at the instant trial."

In 29 Am. Jur., Effect of Knowledge of or Notice to Insurer Generally, Section 807, we find the following: "It is usually held that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions. The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it voidable at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition and to execute a binding contract, rather than to have deceived the insured into thinking he is insured when in fact he is not, and to have taken his money without consideration. The reasonable view is that warranties or representations in an application of insurance are for the benefit of the insurer, in order that it may determine whether it will accept the risk, and if, with knowledge that statements made therein are untrue, it consummates the contract of insurance, it is deemed to have thereby waived the right to subsequently assert their falsity to avoid liability."

In the case of National Life Co. v. Rigney et al., 297 Ky. 743, 180 S. W. 2d 847, 848, the court said:

"The rule is well settled that false answers to questions concerning matters material to the risk, or false answers fraudulently made, whether material to the risk or not, will void a policy of insurance. Business Men's Assur. Co. of America v. Conley, 280 Ky. 375, 133 S. W. 2d 554; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. 2d 990, 994. But there is an exception to the rule, and that is: Where the insurer was fully cognizant of all the facts, it cannot be said, as a matter of law, that it has relied upon the written statements contained in the application, because, where a condition provides for a forfeiture upon its violation, a waiver of the forfeiture or an estoppel to rely upon the violation of the condition may be proved by parol evidence. The rule and the exception are succinctly and fully stated in Svea Fire & Life Ins. Co. v. Walker, 235 Ky. 289, 30 S. W. 2d 1105, 1106, 1107, from which we quote:

" 'The conditions are that if certain material representations are untrue the policy will be void, or if untrue and fraudulent the same result will follow, regardless of their materiality. The insurer is not presumed to have sufficient information in reference to the article upon which the insurance is sought to enable it to determine if it is a suitable risk; therefore it is eminently proper for it to secure such information from the insured and to rely on the representations he makes, and if untrue and material or fraudulent he should be held accountable therefor, even to the extent of avoiding the policy.

" 'But if the insurer is fully cognizant of all the facts, we cannot say as a matter of law that it relies on the statements in the application; in other words, if with full knowledge of all the essential facts it accepts the premium and treats the insured as a policy holder before a loss, it will be presumed to have waived the forfeiture provisions, and therefore will not be heard to say that the policy is void on that ground, if the insured acted in good faith, even though in some material respects the statements in the application were untrue.' "

We are here confronted with the question of whether or not the additional evidence produced on the second trial was sufficient to justify a submission to the jury,

and whether or not the defendant below possessed such knowledge of the rejections as would hold it liable under the policy of the insurance, and whether or not the court erred in directing a verdict for the defendant.

The contention of the appellants herein must find its justification in evidence tending to establish such knowledge on the part of the insurance company. For such evidence we shall examine the testimony of three witnesses introduced by the defendant.

A. D. Hunter, Secretary of the Guarantee Mutual Life Company, testified that Suttles applied to his company June 11, 1938, and was rejected on June 23, 1938; that his company was a member of M. I. B. and that at the time of this rejection, their M. I. B. card contained three reports on Suttles. He further testified that his company reported the physical impairment discovered in Suttles to the M. I. B. upon which it had rejected him.

Dr. Chester T. Brown, medical director of Prudential Insurance Company of America, testified that Suttles made application to his company on October 6, 1938, and was rejected on November 17, 1938. He testified that his company was a member of M. I. B.; that each new report to subscribers from M. I. B. contained all previous reports for the preceding five years or more. He testified that his M. I. B. on Suttles in October 1938 contained five records; that the information shown by the card indicated a serious condition. He stated that his company rejected Suttles' application because of the information contained on the card. The M. I. B. card showed the following:

"Suttles, Delos E., Grocer, b. April 12, 1906, Tenn. May 20, 1931, a company reported a circulatory disorder. July 10, 1936, a company reported an unclassified heart murmur. May 20, 1938, a company reported an apical, systolic, constant murmur transmitted to the left, with a moderate degree of hypertrophy of the heart and a blood pressure of 140-44. June 30, 1938, a company reported an apical, systolic, constant murmur, with history of rheumatism or similar disease, a marked degree of hypertrophy of the heart and a blood pressure of 130-30.

"Sept. 19, 1938, a company reported an apical, systolic, constant murmur with history of rheumatism or similar disease."

Dr. W. T. McKinney, defendant's chief physician, who approved the application for reinstatement, and whose testimony appellee admitted in its brief was inconsistent and unsatisfactory, testified that medical examiners generally are charged with the duty of receiving applications for insurance or reinstatement, and of approving or rejecting same; that in carrying out this duty he had before him the application, the medical examination, inspection report, the services of the Medical Information Bureau (M. I. B.), and other information for determining the insurability of the applicant. He testified as follows:

"43-206—Now the custom of the company where there is an application for reinstatement or for regular insurance, is to bring the information on the M. I. B. cards to you, isn't that true? A. Yes, sir."

"45-222—And you use that service in determining the insurability of the applicant for original insurance and for reinstatement? A. Yes, sir."

"45-223—You did use that service in this particular case? A. We did."

Pursuant to the information received, and as a result thereof, Dr. McKinney, chief examiner and medical director of the company, wrote the following letter to Dr. William H. Hobbs, examiner at Hazard:

"Dec. 29, 1938.

"In Re: Delos E. Suttles—555 North Main
        Hazard, Kentucky
        Age 33.

"Dr. Wm. H. Hobbs,
"Hazard, Kentucky

"Dear Doctor:

"Thank you for the examination you made of Mr. Suttles, 7th instant.

"It is noted that you have given Mr. Suttles a clean bill of health. Confidentially there are indications that past examination of Mr. Suttles has shown heart murmurs—and as recent as December, 1938.

"Please favor us with a careful review, quizzing Mr. Suttles relative to past history. As much depends on

your report, we trust you will make a rigid examination and favor us with details of same.

''Thanks for this favor.

''With best wishes for a Happy and Prosperous New Year, I am,

''Yours very truly,
''Medical Director

''WTMCK:LH
''Enc.

''P. S.   Please favor us with prompt reply.''

Dr. Hobbs replied to the above letter as follows:

''Hazard, Kentucky January 19th, 1939

''Kentucky Home Mutual Life Ins. Co.
''Louisville, Ky.
''Attention Dr. W. T. McKinney:

''Some time before Xmas I had a letter from the above Company in regard to Mr. Delos Suttles reinstatement of his policy.   In that letter I give him about a clear bill, yet this man has some *imparement* left him when he was only 15 years old when he had a spell of rheumatism.   I have seen the time for a period of a few years that I could not and would not of passed him.

''But I have been his family physician for 21 years, and after watching him during the 9 years work for Blue Diamond Coal Co., this work was hard work and long hours, he did this it seemed with as much ease as any normal man & now he is in the goods business for himself here in Hazard and has been for 2 or 3 years, this work is only about half as hard on him as his other work.

''Knowing this man as I do and being in contact with him for so many years, I feel like I would be doing him an injustice not to pass him for reinstatement and also I feel like I am not doing the Company any injustice in passing him, after watching him for the past 15 years or longer, and all during this time he has had improvement on the heart condition, with the change of work & his future chance to be his own boss & at the same time knowing the hard work that he has done in the past give me a lot more information about this man and his physical condition than I would know if he was a stranger

and that is my reason for passing him. I do not think his condition will bother him in the future.

"My other letter must of got lost in the mail as it seems the Company did not get it, as they would not of wrote Mr. Suttles the letter he has at this time.

"Very truly yours,
"William H. Hobbs, M. D.

"P. S. W. T., here is my best wishes for a prosperous and happy New Year during 1939. Will drop in & see you next time in your city."

The fact of the rejections on the part of the other two insurance companies, based upon the M. I. B. reports, which was a service the appellee herein used; the time that elapsed from the receipt of the application to the reinstatement of the policy, which was time obviously required and used for additional investigation, and within which the letter to Dr. Hobbs, above, was written, it appears to us that the company possessed such knowledge as would meet the test above, and such as would justify a submission of the cause to the jury.

Wherefore, the judgment is reversed for proceedings consonant with this opinion.